[No. 17108-9-I. Division One. June 8, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. PAUL
A. BUTTERWORTH, *Appellant*.

*Edward L. Douglas, Jr.*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Richard Martinez, Deputy*, for respondent.

PEKELIS, J.—Paul A. Butterworth appeals his conviction for a violation of the Uniform Controlled Substances Act, RCW 69.50.401. He contends that the evidence gathered during a search of his home should have been suppressed because the search was conducted pursuant to an illegally

obtained warrant. We agree and reverse.

On or about August 2, 1984, Detective Dave Draveling of the Issaquah Police Department received information from a confidential informant regarding a marijuana "grow operation." The informant had been in contact with Carrie Butterworth, the appellant's sister, and had observed her distributing marijuana on several occasions. Carrie told the informant that her brother, Paul Butterworth, supplied her with marijuana, and that he had a grow operation at his residence.

Upon receiving this information, Detective Draveling attempted to locate Paul Butterworth's residence by contacting Pacific Northwest Bell (PNB). PNB indicated that it had a listing for Paul Butterworth, but that the listing was unpublished. Nevertheless, Detective Draveling was able to obtain Butterworth's address and telephone number by simply making a written request to the PNB security department.

Detective Draveling proceeded to the address in question with Detective Dave Voller. As they waited on the front porch for someone to answer the door, they observed a square hole in the siding above the door which appeared to be an attic vent. Standing below the apparent vent, the two detectives smelled a strong odor of growing marijuana. Eventually Butterworth answered the door. In the course of a brief conversation with Detective Draveling, Butterworth identified himself and stated that he had lived at that address for about a year.

The detective passed on this information to Brian J. Wilson of the Renton Police Department. Wilson's affidavit, which contained the facts outlined above, formed the basis for the issuance of a search warrant. The warrant was executed, and several pounds of marijuana plants, as well as other evidence, were discovered and seized.

Butterworth was charged with a violation of the Uniform Controlled Substances Act. He moved to suppress the evidence obtained pursuant to the search warrant arguing that the detectives had obtained his address from PNB by

means of an illegal, warrantless search. Pursuant to CrR 3.6, a suppression hearing was held before the criminal motions judge, and Butterworth's motion was denied. After a bench trial on stipulated facts, Butterworth was found guilty as charged.

On appeal, Butterworth argues that he had a constitutionally protected privacy interest in his unpublished telephone listing. He contends that the police unreasonably intruded into his private affairs in violation of Const. art. 1, § 7 when they obtained his address from PNB without a search warrant or other valid legal process. Butterworth concedes that the actions of the police in obtaining his address would not constitute a "search" under U.S. Const. amend. 4. *See Smith v. Maryland*, 442 U.S. 735, 61 L. Ed. 2d 220, 99 S. Ct. 2577 (1979) (installation and use of pen register does not constitute a "search" within the meaning of the Fourth Amendment). Nevertheless, he argues, under Const. art. 1, § 7, which provides greater protection than the Fourth Amendment, *see State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d 151 (1984), a search did occur.

The relevant inquiry for determining when a search has occurred under Const. art. 1, § 7 is whether the State "unreasonably intruded into the defendant's 'private affairs.'" *Myrick*, 102 Wn.2d at 510. The privacy protections of our state constitution encompass more than the defendant's merely subjective expectations, which may depend on such things as advances in surveillance technology, *Myrick*, 102 Wn.2d at 511, and may, moreover, be subject to manipulation by police and other agents of the state. Instead, the appropriate analysis under Const. art. 1, § 7 focuses on "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant." *Myrick*, 102 Wn.2d at 511.

As the precise issue presented by this case is one of first impression in this state, Butterworth relies heavily on *People v. Chapman*, 36 Cal. 3d 98, 679 P.2d 62, 201 Cal. Rptr. 628 (1984). In *Chapman*, the police obtained an unpub-

lished telephone number from an informant who had used the number to place illegal bets. Acting without a warrant, the police contacted the telephone company and obtained the name and address corresponding to the number, which were then used to obtain a search warrant. The warrant was executed and evidence of illegal betting seized. The trial court granted the defendant's motion to suppress the evidence on the grounds that the name and address had been obtained through a warrantless, and hence illegal, search. *Chapman*, 679 P.2d at 64–65.

On appeal, the Supreme Court of California affirmed. The court first determined that under Cal. Const. art. 1, § 13,[1] the defendant had a "reasonable expectation of privacy" in the unpublished listing which the police obtained from the telephone company. *Chapman*, 679 P.2d at 71. The court reasoned that this conclusion followed directly from its earlier decision in *People v. Blair*, 25 Cal. 3d 640, 602 P.2d 738, 159 Cal. Rptr. 818 (1979), which held that under the California Constitution telephone toll records are protected from warrantless disclosure. *Chapman*, 679 P.2d at 67. The court was also persuaded by the following facts: (1) disclosure of one's name and address to the telephone company is not entirely volitional, (2) such disclosure is plainly for the limited purpose of billing, and (3) by affirmatively requesting an unpublished listing, the defendant took specific steps to ensure greater privacy than that afforded other telephone customers. *Chapman*, 679 P.2d at 67–68. The court concluded that the warrantless seizure of the unpublished listing violated Cal. Const. art. 1, § 13. *Chapman*, 679 P.2d at 71. Since the warrant obtained for the subsequent search of the defendant's residence depended upon the fruits of this unlawful seizure, the court

---

[1]Cal. Const. art. 1, § 13 provides:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

held that the evidence seized in that search was properly suppressed. *Chapman,* 679 P.2d at 72.

█ Not only is *Chapman* virtually indistinguishable on its facts from the case sub judice, but its analysis applies with equal or greater force here. For example, we note that whereas the language of Cal. Const. art. 1, § 13 closely tracks that of the Fourth Amendment, the language of Const. art. 1, § 7 is much broader. Thus, it is much clearer in the case of Const. art. 1, § 7 than in the case of Cal. Const. art. 1, § 13 that an interpretation which extends broader rights than does the Fourth Amendment is appropriate. *See State v. Gunwall,* 106 Wn.2d 54, 61, 65–66, 720 P.2d 808 (1986) (difference in language between Const. art. 1, § 7 and U.S. Const. amend. 4 is one factor indicating that more expansive interpretation of Const. art. 1, § 7 is appropriate).

Furthermore, our Supreme Court has held in *Gunwall,* just as the California court held in *Blair,* that telephone toll records are constitutionally protected from warrantless disclosure. In *Gunwall,* the court specifically considered the application of Const. art. 1, § 7 to the disclosure of telephone subscriber information and concluded that a telephone subscriber has a constitutionally protected privacy interest in the records of the calls she makes. *Gunwall,* 106 Wn.2d at 67–68. Among the considerations that the court found persuasive were (1) that the telephone is a "necessary component of modern life" and (2) that disclosure of the information to the telephone company was made "for a limited business purpose and not for release to other persons for other reasons." *Gunwall,* 106 Wn.2d at 67–68 (quoting *People v. Sporleder,* 666 P.2d 135, 141 (Colo. 1983) and *State v. Hunt,* 91 N.J. 338, 450 A.2d 952, 956 (1982)); *cf. Chapman,* 679 P.2d at 67–68. Consequently, the court held that the police unreasonably intruded into the defendant's private affairs without authority of law and in violation of Const. art. 1, § 7 when they obtained her long distance toll records from the telephone company without a warrant or other valid legal process. *Gunwall,* 106 Wn.2d at

68.

The considerations found to be persuasive in *Gunwall* are also present here. Indeed, since Butterworth specifically requested privacy regarding his address and telephone number in asking for an unpublished listing, we need not resort to assumptions about his expectation of privacy. *Gunwall* makes clear that the disclosure of this information to the telephone company for internal business purposes does not alter the degree of privacy to which a citizen is constitutionally entitled. *Gunwall*, 106 Wn.2d at 67–68 (citing *Sporleder*, 666 P.2d at 141).

The State contends that the action taken by the police in this case is justified by regulation 11(G) of PNB's tariff schedule.[2] Regulation 11(G), which has been filed with the Washington Utilities and Transportation Commission pursuant to RCW 80.36.100, provides that when a subscriber requests an unpublished telephone number

the Company will take reasonable precautions:
1. Not to publish the number in either its publicly distributed directories or other Company records containing such information available to the general public; and
2. Except when required by law, not to disclose the number to any person *other than representatives of law enforcement agencies,* its own employees or representatives, or those of other telephone companies or other telephone subscribers who are billed for calls placed to or from non–published numbers.

(Italics ours.) The State argues that regulation 11(G) effectively limits the expectation of privacy to which a telephone subscriber is entitled. A similar argument, based on a decision of the California Public Utilities Commission, was

---

[2]The State also attempts ineffectively to distinguish *Chapman.* In this regard, we merely point out that the fact that the use of a telephone is not an "essential element" of the crime with which Butterworth is charged is of no consequence whatever in identifying "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant." *Myrick,* 102 Wn.2d at 511. The nonretroactivity of *Chapman* and the subsequent restrictions on California's exclusionary rule are likewise irrelevant.

made to, and rejected by, the court in *Chapman. See Chapman,* 679 P.2d at 70–71.

We similarly reject the State's flawed argument. First, it begs the question of whether regulation 11(G) is constitutional. The Legislature may not confer upon the Utilities and Transportation Commission the judicial power to determine the constitutional rights of citizens. If citizens have a constitutionally protected privacy interest in their unpublished telephone listings, then the Commission cannot render warrantless disclosure of those listings lawful by the simple expedient of adopting a rule to that effect. If it could, then nothing would prevent the Commission from effectively overruling the Supreme Court's decision in *Gunwall* by simply adopting a rule allowing for warrantless disclosure of telephone toll records.

Second, the State's argument places undue emphasis on the citizen's *subjective* expectations of privacy. This type of analysis has previously been rejected by our Supreme Court. *See Myrick,* 102 Wn.2d at 513. As discussed above, the protections of Const. art. 1, § 7 encompass more than the subjective privacy expectations of modern citizens who, for various reasons, are learning to expect diminished privacy in many aspects of their lives. *Myrick,* 102 Wn.2d at 511. The Legislature, through the Utilities and Transportation Commission, is not permitted to define the range of constitutionally protected privacy interest by manipulating the subjective expectations of citizens. "Whatever role the subjective expectation of privacy may play in determining the extent of a constitutional right, '. . . the state cannot curtail a person's right to privacy by announcing and carrying out a system of surveillance which diminishes that person's expectations.'" *Chapman,* at 113 (quoting *De Lancie v. Superior Court,* 31 Cal. 3d 865, 875 n.11, 647 P.2d 142, 148 n.11, 183 Cal. Rptr. 866 (1982)).

The State also attempts to persuade us that *In re Rosier,* 105 Wn.2d 606, 717 P.2d 1353 (1986) is somehow dispositive of this issue. In *Rosier,* the court considered the scope of the general personal privacy exemption provided by the

public disclosure act, RCW 42.17, and enunciated the rule that if disclosure of information specifically identified with a particular individual's name is not "highly offensive," then the public interest in disclosure will outweigh the individual's privacy interest. *Rosier*, 105 Wn.2d at 613. The court then applied this principle to a request by the police for disclosure of a particular individual's electrical usage records, finding that the release of such information would not be "highly offensive" to a reasonable person and is therefore permissible so long as the police have an "articulable suspicion" of illegal conduct. *Rosier*, 105 Wn.2d at 614–15.

However, *Rosier* is inapposite for at least two reasons. First, the *Rosier* court did not have before it and did not consider the disclosure of information such as that contained in an unpublished telephone listing which an individual has taken specific steps to keep private. If it had, it might well have found such a disclosure to be "highly offensive," requiring a greater showing on the part of the police than an "articulable suspicion" of illegal conduct. Second, and more importantly, *Rosier* was decided under the public disclosure act, RCW 42.17, and the court *explicitly* declined to consider whether a different result might be required under Const. art. 1, § 7. *Rosier*, 105 Wn.2d at 616.

In conclusion, we hold that when the police obtained Butterworth's address without authority of law, they violated Const. art. 1, § 7. We further hold that the "authority of law" required in the case of unpublished telephone listings is the same as that which is required in the case of long distance toll records:

> Generally speaking, the "authority of law" required by Const. art. 1, § 7 in order to obtain records includes authority granted by a valid, (*i.e.,* constitutional) statute, the common law or a rule of this court. In the case of long distance toll records, "authority of law" includes legal process such as a search warrant or subpoena.

(Footnotes omitted.) *Gunwall*, 106 Wn.2d at 69.

Because the police obtained no warrant or subpoena for

Butterworth's unpublished telephone listing, the seizure of that information was unlawful. Since there is no evidence that the police learned of Butterworth's address through other means, we must conclude that the warrant for the search of his residence necessarily depended upon the fruits of an unlawful seizure. Therefore, the evidence seized in the execution of that warrant must be suppressed.

Reversed.

RINGOLD, A.C.J., and WILLIAMS, J., concur.

Reconsideration denied July 15, 1987.

Review denied by Supreme Court October 6, 1987.