[No. 9036-1-III. Division Three. March 16, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. VICKIE JO STANPHILL, *Appellant.*

624

*William Edelblute,* for appellant.

*Donald W. Schacht, Prosecuting Attorney,* and *Gabriel Acosta, Deputy,* for respondent.

MUNSON, A.C.J.—Vickie Jo Stanphill appeals her conviction for possession of a controlled substance. She contends the court erred in denying her motion to suppress evidence obtained from her residence pursuant to a search warrant. We affirm.

On June 27, 1987, Detective Matthew Wood of the Walla Walla Police Department received information from Pete Lewis, a correctional officer at the Washington State Penitentiary in Walla Walla, that a woman named Vickie,

residing at 427 S. First Street, apartment 3, Walla Walla, would be receiving a package containing marijuana and cocaine. This package was to be shipped either Federal Express or United States Postal Service express mail; it was to be sent from a Mr. Rod Hill, residing at 4826 S. 164th Street, Seattle, Washington. Mr. Lewis had received this information from an unnamed correctional officer at the penitentiary who, in turn, had received it from an unnamed inmate. Detective Wood subsequently confirmed that Vickie Stanphill was married to a penitentiary inmate and had lived at 427 S. First Street in the recent past. He contacted Federal Express and security officials at the United States Postal Service requesting notification should a package arrive addressed to Vickie Stanphill from Mr. Hill.

On Thursday, July 2, Bill Keezer, a postal inspector stationed in Spokane, notified the Walla Walla Police Department that a package matching the police description had arrived and was currently at the Walla Walla Post Office. At approximately 3 p.m., Deputy Mark Franklin of the Walla Walla County Sheriff's Office arrived at the Walla Walla Post Office with "Till," a member of the canine unit of the sheriff's office. "Till" was accredited by the Washington State Canine Association as being able to detect various drugs, including cocaine and marijuana. Three separate canine sniff inspections were made of various packages, all resulting in "Till" exhibiting a drug alert for the package mailed to Mrs. Stanphill. The record does not indicate the amount of time this operation took.

July 3, 4, and 5 were nonjudicial days. In Spokane on Monday, July 6, Postal Inspector Keezer applied for a federal search warrant regarding the package based on the information noted above. The search warrant was issued at 9:15 a.m. The package was searched at the post office, revealing balloons filled with a substance testing "presumptive positive" for marijuana. The contents were subsequently repacked in the original package.

Detective Wood went to 427 S. First Street but was unable to locate apartment 3. He did find one at 427½ S.

First Street and observed a letter in the mailbox outside the door mailed to Vickie Stanphill, apartment 3. Further, a vehicle parked in the driveway was registered to Mrs. Stanphill. Detective Wood applied for a state search warrant for 427½ S. First Street. His affidavit was based on the material disclosed by the sender and on notification from Mr. Lewis that Mrs. Stanphill had a scheduled visit with her husband the same day at 4 p.m. The warrant was issued; the package was delivered; the subsequent search produced the marijuana.

Mrs. Stanphill was charged with possession of a controlled substance with intent to deliver. The court denied her motion to suppress. She was convicted of the lesser included offense of possession of a controlled substance. She appeals.

First, Mrs. Stanphill contends the release of information by the United States Postal Service at the request of the police regarding the existence and arrival of a package addressed to her unreasonably intruded upon her private affairs in violation of article 1, section 7 of the Washington State Constitution.[1] She analogizes her factual situation to that in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986) (use of telephone toll call records and pen register tapes) and *State v. Butterworth*, 48 Wn. App. 152, 737 P.2d 1297 (unlisted telephone number), *review denied*, 109 Wn.2d 1004 (1987). There the courts held that police, by obtaining information from a telephone company's toll records without a warrant or other valid legal process, violated Const. art. 1, § 7.

While Mrs. Stanphill's argument is cogent, *Ex parte Jackson*, 96 U.S. 727, 24 L. Ed. 877 (1878) detracts from its persuasiveness. *Jackson* recognizes the Fourth Amendment protections for contents of sealed letters and packages, but it declines to extend this protected status to information on

---

[1]Article 1, section 7 of the Washington State Constitution provides:

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

the exterior of the parcel: "Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, *except as to their outward form and weight,* as if they were retained by the parties forwarding them in their own domiciles." (Italics ours.) *Jackson,* 96 U.S. at 733; *see also United States v. Van Leeuwen,* 397 U.S. 249, 251, 25 L. Ed. 2d 282, 90 S. Ct. 1029 (1970).

The primary focus of both *Gunwall* and *Butterworth* is the expectation–of–privacy issue. *Gunwall,* at 67–68, relying on cases from other jurisdictions,[2] found persuasive that the telephone is a "necessary component of modern life" and that disclosure of the information to the telephone company was made "for a limited business purpose and not for release to other persons for other reasons." Additionally, *Butterworth* notes the defendant had requested an unpublished listing, which adds support for the expectation of privacy.

■ Washington courts have not yet extended the *Gunwall* and *Butterworth* analysis to information located on the exterior of postal packages, *i.e.,* addresses. Although Mrs. Stanphill would have this court do so, we decline. Federal courts have dealt with somewhat similar cases involving a "mail cover," the process by which the postal service furnishes the requesting governmental agency with the information appearing on the face of an envelope or package. Generally, in absence of abuse, a mail cover does not violate the Fourth Amendment. *See* Annot., 57 A.L.R. Fed. 742 (1982) and cases cited therein. *United States v. Choate,* 576 F.2d 165, 177 (9th Cir.), *cert. denied,* 439 U.S. 953 (1978) rationalized that even if a mail cover constituted a search under the Fourth Amendment, it is not "unreasonable":

[T]he senders' placement of their names and addresses on the mail in question waives any privacy claim because the information would foreseeably be available to postal

---

[2]*People v. Sporleder,* 666 P.2d 135, 141 (Colo. 1983); *State v. Hunt,* 91 N.J. 338, 450 A.2d 952, 956 (1982).

employees and others looking at the outside of the mail. Certainly the defendant could not keep that information invisible, and yet the Fourth Amendment only bars intrusions upon a person's "reasonable expectation of privacy."

We acknowledge that part of the rationale for upholding the mail cover process is the analogous pen register cases at the federal level. *Vreeken v. Davis*, 718 F.2d 343, 347 (10th Cir. 1983). We find the intrusiveness in acquiring the information involved here does not rise to the same level as that required for pen registers or toll records. The expectation of privacy as to information on the outside of envelopes and packages is minimal. This is particularly true here where only a single package is involved. Extension of *Gunwall* and *Butterworth* is not warranted.

Second, Mrs. Stanphill contends the delay in delivery by the United States Postal Service at the request of the police constituted a seizure in violation of the fourth amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution. Although detention and inspection of first class mail is generally impermissible, it is not "beyond the reach of all inspection". *Van Leeuwen*, 397 U.S. at 252. Detention must be within the bounds of reason. *Van Leeuwen*, 397 U.S. at 252.

Here, the postal inspector stationed in Spokane notified the Walla Walla Police Department that the package in question had arrived and was currently being held at the Walla Walla Post Office.[3] The record reflects that this notification occurred on Thursday, July 2, 1987; the precise time of notification is not indicated in the record. That same day at 3 p.m., the canine unit arrived and confirmed the presence of drugs. The record does not reflect the amount of time required to complete the canine investigation. As such, we do not find the delay unreasonable.

Mrs. Stanphill contends the State's "4–day" delay in obtaining a warrant was unreasonable. The package was to

---

[3]We note the distance between Spokane and Walla Walla is 158 miles.

be delivered in 1 day as it was "express mail." However, it was detained from Thursday, July 2, 1988, through early Monday, July 6, 1988, by the United States postal authority in the United States Post Office. Although the court found "exigent circumstances" due to the impending holiday and the likelihood the evidence would disappear before a warrant could be obtained, she contends the State had sufficient time on July 2 to apply for a warrant.

To support this contention, Mrs. Stanphill cites *State v. Ringer*, 100 Wn.2d 686, 701, 674 P.2d 1240 (1983), *overruled in part on other grounds in State v. Stroud*, 106 Wn.2d 144, 150, 720 P.2d 436 (1986) (which requires consideration of the time to obtain a warrant in examining a situation's exigency) and RCW 2.28.100(3) which provides access to magistrates in criminal cases.[4] This availability of access, Mrs. Stanphill claims, in conjunction with CrR 2.3(c)[5] which authorizes telephonic warrants, supplied the State with the opportunity to act immediately and secure a warrant.

██ While *Ringer* requires the court to consider the availability of telephonic warrants in determining the exigency of a situation, this consideration is made when the police have chosen, on the basis of those exigencies, to initiate a *warrantless search*. Here, the exigencies did not justify a warrantless search but rather a detention in order to secure a warrant. No search was initiated until after the federal warrant was issued.

---

[4]RCW 2.28.100 provides in part: "No court on legal holidays—Exceptions. No court shall be open, nor shall any judicial business be transacted, on a legal holiday, except:

" . . .

"(3) For the exercise of the powers of a magistrate in a criminal action, or in a proceeding of a criminal nature;"

[5]CrR 2.3(c) provides in part:

"**Issuance and Contents.** A search warrant may be issued only if the court determines there is probable cause for the issuance of a warrant. There must be an affidavit or affidavits or sworn testimony establishing the grounds for issuing the warrant. *The sworn testimony may be an electronically recorded telephonic statement.*" (Italics ours.)

Mrs. Stanphill further cites *United States v. Place,* 462 U.S. 696, 77 L. Ed. 2d 110, 103 S. Ct. 2637 (1983) where a 90–minute detention of luggage was found to be excessive. *Place* is also distinguishable. There, the defendant was prevented from continuing on his airline flight and detained with his luggage. The court examined the level of intrusiveness and determined the seizure of his luggage was too excessive for a limited *Terry*–type investigatory stop based on reasonable suspicion; more was required for that level of intrusiveness, *i.e.,* probable cause. *Place,* 462 U.S. at 708–10.

Given the probable cause provided by the canine sniff, the minor level of intrusiveness in detaining the package, the distance between Walla Walla and Spokane, and the intervening holiday, we find the delay until Monday morning was reasonable.

Third, Mrs. Stanphill contends the canine sniff procedure performed at the United States Post Office constituted a search in violation of the fourth amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution. Federal courts provide abundant authority that a canine sniff is not a search within the meaning of the Fourth Amendment. *Place,* 462 U.S. at 707; *United States v. Klein,* 626 F.2d 22, 26 (7th Cir. 1980) and cases cited therein; Annot., 31 A.L.R. Fed. 931 (1977). Washington courts, however, have taken a more conservative approach by requiring an inquiry into the "nature of the intrusion into the defendant's private affairs that is occasioned by the canine sniff." *State v. Boyce,* 44 Wn. App. 724, 729–30, 723 P.2d 28 (1986). As *Boyce,* at 730, notes:

Indeed, we can envision few situations where a canine sniff of an object would unreasonably intrude into the defendant's private affairs. As long as the canine sniffs the object from an area where the defendant does not have a reasonable expectation of privacy, and the canine sniff itself is minimally intrusive, then no search has occurred.

(Footnote omitted.)

█ Mrs. Stanphill contends that *Boyce* limits the validity of the canine sniff procedure to those situations in which no initial seizure of the object which is to be examined has taken place. While *Boyce* does acknowledge the unique facts of its case, specifically a safety deposit box had not been "seized" prior to the canine sniff, it by no means limits this procedure to situations in which no seizure has occurred. Other factors acknowledged by *Boyce* as important were the officer's permission to be in the bank vault area; the lack of complete control of the area where a person has a safety deposit box in a bank; and the minimal intrusion in a canine sniff of the air outside a safety deposit box. *Boyce,* at 730.

In *State v. Wolohan,* 23 Wn. App. 813, 598 P.2d 421 (1979), *review denied,* 93 Wn.2d 1008 (1980), this court held the canine sniff of a package sent via a common carrier, *i.e.,* Greyhound bus, was not a search; this finding was based on a lack of expectation of privacy in the area in which the canine sniff occurred and in the area surrounding the package. Although we are dealing with first class mail here, which raises the expectation of privacy in the package's contents under Van Leeuwen, the focal question of *Wolohan* remains the same: Does the defendant enjoy a reasonable expectation of privacy which was intruded upon by the State? Based on the limited purpose and minor intrusiveness of the canine sniff, particularly in light of the prior information received as to the package's potential illegal contents, we find it does not.

Fourth, Mrs. Stanphill contends the federal warrant for seizure of a package mailed to her was issued in violation of the fourth amendment to the United States Constitution. Under federal law, the Fourth Amendment provides a search warrant may be issued only upon a showing of probable cause. *United States v. Harris,* 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971). We have some questions whether the State has any authority within a United States

Post Office. We decline to reach that issue since it has neither been raised nor briefed.

■ Federal courts utilize the more relaxed "totality of the circumstances" test for determining the presence of probable cause where an informant is involved, *Illinois v. Gates,* 462 U.S. 213, 230, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983); *Massachusetts v. Upton,* 466 U.S. 727, 80 L. Ed. 2d 721, 104 S. Ct. 2085 (1984), whereas Washington courts (*State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984)) utilize the more stringent *Aguilar–Spinelli* test. As this contention relates to the issuance of a federal warrant, we utilize the federal standard.

Citing primarily Washington cases, Mrs. Stanphill claims the reliability prong of *Aguilar–Spinelli* has not been met in this case, since the postal inspector's affidavit is void of information regarding who the informant was and a basis to support his credibility or reliability. We disagree. The real informant in this case was "Till," whose reliability and credibility are established by its extensive training, certification, and past experience. *See Klein,* 626 F.2d at 27. Even assuming the informant was the unnamed correctional officer or inmate and either individual's reliability and basis of knowledge were not fully provided in the supporting affidavit, *Gates,* at 244–45, provides a deficiency may be compensated for through some other indicia of reliability. Here, that reliability is provided through the canine sniff procedure. There was sufficient probable cause to issue the federal warrant based on the totality of the circumstances standard.

Fifth, Mrs. Stanphill contends the State's search warrant of her apartment was issued in violation of article 1, section 7 of the Washington State Constitution. The initial search of the package pursuant to the federal warrant revealed the presence of drugs. This evidence provided sufficient probable cause to issue the state warrant under Washington law. There was no error.

Affirmed.

GREEN and SHIELDS, JJ., concur.