[Nos. 11956-4-III; 11957-2-III.   Division Three.   February 4, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. EDWARD
CHARLES FAYDO, ET AL, *Appellants.*

*Robert W. Critchlow* and *Law Offices of John Cooney &
Associates,* for appellants.

*Donald C. Brockett, Prosecuting Attorney,* and *Kevin M.
Korsmo, Deputy,* for respondent.

THOMPSON, A.C.J. — Dana Faydo, a.k.a. Dana Kendall, and Edward Faydo appeal their bench trial convictions for possession of marijuana with intent to manufacture. They assign error to the court's refusal to suppress evidence of marijuana seized from their residence during a search pursuant to a warrant. They contend the information in the affidavit in support of the warrant was obtained by law enforcement from U S West security in violation of their right under article 1, section 7 of the Washington State Constitution to be free of unreasonable intrusions into their private affairs. We affirm.

On October 24, 1990, Mr. Faydo brought a rare tripowered Cadillac manifold to RAM Engine and asked what it was. The RAM Engine employee who helped Mr. Faydo recognized the manifold as matching the description of one stolen from a Spokane County residence. The employee told Mr. Faydo he would get back to him, and Mr. Faydo gave him his first name and his phone number. The employee then contacted Detective Gerry Fojtik of the Spokane County Sheriff's Department and gave him Mr. Faydo's number and first name.

Detective Fojtik contacted U S West security and learned that the phone number was a published number belonging to Dana Kendall, but, at her request, her address of East 3604 Cleveland, Spokane, was not listed in the telephone directory. U S West Communications' billing information showed Edward Faydo of the same address as an additional name on the billing for that number. The record does not indicate why Mr. Faydo's name was not included in the phone book. Detective Fojtik verified Mr. Faydo's address through the Department of Licensing and TIEPIN, the criminal justice network.

Based on the foregoing, the court issued a warrant to search the Cleveland address for the stolen manifold. The manifold was not found on the premises. However, officers discovered a marijuana grow operation in the basement. The Faydos were charged with possession of marijuana with

intent to manufacture. They unsuccessfully moved to suppress the marijuana found during the search of their residence, and were found guilty on stipulated facts.

Did the State violate Const. art. 1, § 7 when Detective Fojtik obtained Mr. Faydo's name from U S West's billing information? On the narrow facts presented here, we hold "no".

Two Washington cases address the constitutionality of law enforcement officers' obtaining customer information from telephone companies without legal process. *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986); *State v. Butterworth*, 48 Wn. App. 152, 737 P.2d 1297, *review denied*, 109 Wn.2d 1004 (1987).

In *Gunwall*, a warrant was issued for the search of defendant's home for controlled substances, based, in part, upon telephone toll records and information obtained by use of a pen register, a device that records numbers dialed from a certain telephone. *Gunwall*, at 56, 63. The court recognized that such information is *not* protected by the Fourth Amendment. *Gunwall*, at 64 (citing *Smith v. Maryland*, 442 U.S. 735, 61 L. Ed. 2d 220, 99 S. Ct. 2577 (1979)). Nevertheless, the court held it was appropriate to "resort to separate and independent state grounds of decision . . .", *i.e.*, article 1, section 7 of the Washington State Constitution. *Gunwall*, at 67. Generally, the court noted the significant differences in text between the Fourth Amendment and article 1, section 7, which protects a person's "private affairs". *Gunwall*, at 65. Specifically, the court relied upon "[t]he long history and tradition of strict legislative protection of telephonic and other electronic communications in this state . . .". *Gunwall*, at 66.[1]

---

[1] *Gunwall*, at 61-62, identified the following six "neutral criteria" relevant to determining whether the state constitution should be considered as extending broader rights to its citizens than does the federal constitution: (1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern.

Having concluded state constitutional analysis was appropriate, the court held that police use of the toll records and the pen register information without authority of a warrant unreasonably intruded on the defendant's private affairs. *Gunwall*, at 68. In so holding, the court relied upon the rationale in *State v. Hunt*, 91 N.J. 338, 347, 450 A.2d 952 (1982):

> It is unrealistic to say that the cloak of privacy has been shed because the telephone company and some of its employees are aware of this information. Telephone calls cannot be made except through the telephone company's property and without payment to it for the service. This disclosure has been necessitated because of the nature of the instrumentality, *but more significantly the disclosure has been made for a limited business purpose and not for release to other persons for other reasons.*

(Italics ours.) *Gunwall*, at 68.

In *Butterworth*, the police received information from a confidential informant that the defendant had a grow operation at his residence. *Butterworth*, at 153. The police called Pacific Northwest Bell in an attempt to locate the defendant's address; the company indicated the defendant's listing was unpublished. It released his address after the police made a written request to the company's security department. *Butterworth*, at 153. The police used this information to obtain a warrant for the search of defendant's home, during which they discovered and seized several pounds of marijuana plants. *Butterworth*, at 153.

The court held the State violated article 1, section 7 of the Washington Constitution and "intruded into the defendant's private affairs . . ." when the police obtained his unpublished listing from the telephone company. *Butterworth*, at 156. *Butterworth* relied upon *People v. Chapman*, 36 Cal. 3d 98, 679 P.2d 62, 201 Cal. Rptr. 628 (1984), which cited the following facts:

> (1) disclosure of one's name and address to the telephone company is not entirely volitional, (2) such disclosure is plainly for the limited purpose of billing, and (3) by affirmatively requesting an unpublished listing, the defendant took specific steps to

ensure greater privacy than that afforded other telephone customers.

*Butterworth*, at 155 (citing *Chapman*, 679 P.2d at 67-68).

As the State points out, *Gunwall* and *Butterworth* are distinguishable on their facts. *Gunwall* concerned the release of telephone use information; *Butterworth* concerned the release of an unpublished listing. Here, the name Dana Kendall and the phone number were listed, but not the address. U S West told Detective Fojtik that the subscriber had given Mr. Faydo's name, as well as her own, for the billing for that number. The question is whether these distinctions are significant.

██ The disclosure of Mr. Faydo's name is different in kind from disclosure of the telephone use information which was the subject of the *Gunwall* decision. His identity is not "private" in the same sense as is a record of the phone numbers dialed on a subscriber's phone. The average person reasonably believes the phone numbers he calls are protected from warrantless government intrusions. *Cf. State v. Boland*, 115 Wn.2d 571, 578, 800 P.2d 1112 (1990) (belief that government will not sift through garbage is reasonable). In contrast, in this day and age in which private businesses routinely sell customer lists to other businesses, it is unreasonable to believe a customer's name and the names of others he lists at his residence for billing purposes will be kept private.

The disclosure of Mr. Faydo's name also is different from the disclosure of the unpublished listing in *Butterworth*, which the telephone subscriber had requested the company not release. Neither Mr. nor Mrs. Faydo asked U S West to keep their identities confidential. We know of no law, either statutory or decisional, which prohibits private companies from giving out the names of their customers. RCW 42.17-.314, cited by the Faydos, applies only to public utility districts or municipally owned electrical utilities.[2]

---

[2]RCW 42.17.314 provides:

"A law enforcement authority may not request inspection or copying of records of any person, which belong to a public utility district or a municipally

626

We therefore hold the State did not violate article 1, section 7 of the Washington Constitution when the sheriff's office obtained Mr. Faydo's name from U S West without legal process.

Affirmed.

MUNSON and SWEENEY, JJ., concur.

Review denied at 121 Wn.2d 1034 (1993).

owned electrical utility, unless the authority provides the public utility district or municipally owned electrical utility with a written statement in which the authority states that it suspects that the particular person to whom the records pertain has committed a crime and the authority has a reasonable belief that the records could determine or help determine whether the suspicion might be true. Information obtained in violation of this rule is inadmissible in any criminal proceeding."