[No. 61383-4.    En Banc.    September 29, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. HAROLD MICHAEL GOUCHER, *Appellant*.

*John A. Hays,* for appellant.

*C.C. Bridgewater, Prosecuting Attorney,* and *Ronald S. Marshall, Deputy,* for respondent.

MADSEN, J. — At issue in this case is whether police officers violated the Defendant's right to be free from government intrusion under the Fourth Amendment and article 1, section 7 of the Washington Constitution when they answered his telephone call during a lawful search of a residence and engaged him in a conversation that ultimately led to his arrest.

## FACTS

On or about October 23, 1992, a Cowlitz County district court judge granted a request for a search warrant presented by members of the Cowlitz-Wahkiakum County Narcotics Task Force. The search warrant was for the person and residence of Jose Luis Garcia-Lopez, and was based on a confidential informant's statement that Garcia-Lopez was selling cocaine at his residence. The supporting affidavit stated that the informant told Garcia-Lopez he/she might need to buy some more cocaine in the future, and that Garcia-Lopez " 'told [the informant] to go ahead and call and he would have it available.' " Clerk's Papers, at 27. While the warrant incorporated the affidavit by reference, neither document specifically referred to a search or seizure of any telephones at the Garcia-Lopez residence.

The search warrant was executed on October 23, 1992. During the search of the residence and the four persons found therein, the telephone rang and was answered by a

task force detective. When an adult male asked for Luis, the detective told him that Luis had gone on a run and that he (the detective) was handling business until Luis returned.

The caller identified himself as Mike Goucher and said he was calling from a pay phone. He asked if he could come over and buy "an eighth", which the detective understood to mean an eighth of an ounce of cocaine. Clerk's Papers, at 27. The detective told Goucher to come over, but not until 11:30 p.m., as he had someone coming before Goucher.

The task force members then obtained some previously seized, pretested cocaine. One of the detectives was designated to act as the seller and took possession of the cocaine. At about 11:35 p.m. a man came to the Garcia-Lopez residence and said he was Mike who had called earlier. The detective asked Mike if he had the money, whereupon Mike took $40 from his pocket. The detective then gave Mike a bindle of cocaine, which Mike examined. When Mike remarked that it was a bit light, the detective agreed and gave him another bindle.

Mike told the detective he had been dealing with Luis for some time and had established a relationship of trust with him. The detective then showed Mike his badge and placed him under arrest. Mike was fully identified as Harold Michael Goucher, hereafter referred to as the Defendant.

After the detectives recovered the first bindle of cocaine from the Defendant's sock, he was advised of his rights. He waived them and admitted having come to buy cocaine that night and to having purchased it from Garcia-Lopez before.

By information filed on October 29, 1992, the Cowlitz County prosecutor charged the Defendant with one count of possessing cocaine. The Defendant then moved to suppress the evidence obtained as a result of the detective answering the telephone in Garcia-Lopez' residence.

The trial judge denied the motion to suppress, concluding that the Defendant had no expectation of privacy in arranging the cocaine purchase at Garcia-Lopez' residence and that the officers were at the residence under authority of a valid

search warrant. The judge further concluded that the supporting affidavit gave the officers reason to answer the telephone at the residence when it rang and to make such cocaine deals as the callers sought to make.

Following the denial of his motion to suppress, the Defendant stipulated to the facts and the court found him guilty as charged. The Defendant then appealed, and Division Two of the Court of Appeals certified his appeal to this court pursuant to RCW 2.06.030.

## ANALYSIS

In challenging the denial of his motion to suppress, the Defendant first takes issue with the trial court's conclusion that he had no expectation of privacy in arranging the cocaine purchase. More precisely, the Defendant asserts that under article 1, section 7 of the Washington State Constitution, the citizens of this state have a privacy interest in the making and receiving of telephone calls.

██ Const. art. 1, § 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law". Violation of a right of privacy under this provision turns on whether the State has unreasonably intruded into a person's "private affairs". *State v. Boland*, 115 Wn.2d 571, 577, 800 P.2d 1112 (1990); *State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d 151 (1984). In contrast, a search occurs under the Fourth Amendment if the government intrudes upon a subjective and reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 351-52, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). The private affairs inquiry is broader than the Fourth Amendment's reasonable expectation of privacy inquiry. While including legitimate privacy expectations protected by the Fourth Amendment, the inquiry under the Washington Constitution focuses on "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant". *Boland*, at 577 (quoting *Myrick*, at 510-11).

■ We find no error in the trial court's conclusion that the Defendant's telephone conversation with the detective did not violate the Fourth Amendment. We note that under similar facts, the Fifth Circuit found no expectation of privacy on the defendant/caller's part:

[The defendant] instituted the calls and spoke voluntarily and without hesitation to the agents. None of the agents pretended to be Brock, the party [defendant] wished to reach. [Defendant] had no legitimate expectation of privacy in his telephone conversation with the agents. He assumed the risk of exposure when he spoke freely with strangers.

*United States v. Congote*, 656 F.2d 971, 976 (5th Cir. 1981); *see also United States v. Passarella*, 788 F.2d 377, 380 (6th Cir. 1986) (every state and federal court that has addressed similar facts has concluded that an agent's conduct in answering a telephone while lawfully on the premises is not violative of the Fourth Amendment).

The principal issue, then, is whether the Defendant's rights under the Washington Constitution were violated by the detective's actions in answering his telephone call and engaging him in conversation.

■■ It is settled law that article 1, section 7 provides greater protection for telephonic communications than does the Fourth Amendment. *State v. Gunwall*, 106 Wn.2d 54, 68-69, 720 P.2d 808, 76 A.L.R.4th 517 (1986). Thus, we need not reexamine all of the factors set forth in *Gunwall* for determining whether a state constitutional provision provides greater protection than its federal counterpart. *See Boland*, at 576; *State v. McFadden*, 63 Wn. App. 441, 446, 820 P.2d 53 (1991), *review denied*, 119 Wn.2d 1002 (1992). Our task is limited to an examination of Washington law to see if the Defendant has established that he is entitled to the enhanced protection of article 1, section 7 under the facts of this case.

■■ We emphasize here that if the State has not intruded unreasonably into someone's private affairs, no search has occurred and article 1, section 7 has not been

violated. *See State v. Young*, 123 Wn.2d 173, 181, 867 P.2d 593 (1994). In *Young*, this court explained that "what is voluntarily exposed to the general public" is not considered part of a person's private affairs. *Young*, at 182.

In this case, the Defendant voluntarily exposed his desire to buy drugs to someone he did not know. While he states that "[i]n today's world, the telephone is the primary means for personal communication with friends, loved ones, and business relations", he neglects to observe that his conversation was with an acknowledged stranger. See Br. of Appellant, at 14. The State's contention that the Defendant waived his claim of privacy by dealing with a stranger thus has merit. A privacy interest must be reasonable to warrant protection even under article 1, section 7. As one commentator has stated, "a 'private affairs' interest may be defined as a matter or object personal to an individual such that intruding upon it would offend a reasonable person." James W. Talbot, Comment, *Rethinking Civil Liberties Under the Washington State Constitution*, 66 Wash. L. Rev. 1099, 1113 (1991).

The Court of Appeals addressed this concept in relation to telephone records in *State v. Butterworth*, 48 Wn. App. 152, 737 P.2d 1297, *review denied*, 109 Wn.2d 1004 (1987). At issue in *Butterworth* was whether police validly obtained the defendant's unpublished address and telephone number by requesting it from the telephone company.

The defendant contended that the police unreasonably intruded into his private affairs when they obtained his address without a search warrant or other valid legal process.

The *Butterworth* court observed that in *Gunwall*, this court specifically concluded that a telephone subscriber has a protected privacy interest under article 1, section 7, in the records of the calls he or she makes. *Gunwall*, at 67-68, *cited in Butterworth*, at 156. The court then addressed an additional consideration presented by the *Butterworth* facts:

Indeed, since Butterworth specifically requested privacy regarding his address and telephone number in asking for an unpublished listing, we need not resort to assumptions about his expectation of privacy. *Gunwall* makes clear that the disclosure of this information to the telephone company for internal business purposes does not alter the degree of privacy to which a citizen is constitutionally entitled.

*Butterworth*, at 157. The Court of Appeals thus concluded that when the police obtained Butterworth's address without authority of law, they violated article 1, section 7. *Butterworth*, at 159.

In contrast, the Defendant in the present case did not make any special effort to protect his privacy. What is at issue here is the degree of privacy accorded a conversation voluntarily engaged in with an acknowledged stranger.

In support of his argument that police participation in this conversation unreasonably intruded upon his private affairs, the Defendant relies on several cases dealing with Washington's privacy act, RCW 9.73. He does not, however, contend that the privacy act itself was violated in this case. This State's privacy act, RCW 9.73, is broad, detailed, and extends considerably greater protection to Washington citizens than do comparable federal statutes. *Gunwall*, at 66; *State v. O'Neill*, 103 Wn.2d 853, 861-67, 700 P.2d 711 (1985). The protections accorded interpersonal communications are not absolute, however. This court has upheld the constitutionality of privacy act provisions allowing for the recording of telephone conversations without prior judicial approval where one party consents to the recording. *State v. Salinas*, 119 Wn.2d 192, 198-99, 829 P.2d 1068 (1992). Such interceptions are expressly authorized under the privacy act when the conversation regards illegal drug transactions. *See* RCW 9.73.200, .230; *see also State v. Kadoranian*, 65 Wn. App. 193, 199, 828 P.2d 45 (1992) ("The Legislature has recognized a general privacy right in private conversations, and we find nothing unconstitutional in the exception it has provided for investigation of drug dealing."). Moreover, as the *Kadoranian* court observed in discussing the principle of 1-party consent,

"a person takes a risk that the other party to the conversation may provide access to the conversation to others, no matter what means are used". *Kadoranian*, at 196 (citing *State v. Jennen*, 58 Wn.2d 171, 174, 361 P.2d 739 (1961)).

Cases discussing the nature of communications protected under the privacy act do no more than the act itself to support the Defendant's insistence that his conversation with the detective was private. To determine whether a telephone conversation warrants privacy act protection, a court must consider the intent of the participants as manifested by the facts and circumstances of each case. *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 190, 829 P.2d 1061 (1992) (citing *State v. Forrester*, 21 Wn. App. 855, 861, 587 P.2d 179 (1978), *review denied*, 92 Wn.2d 1006 (1979)). In *Kadoranian*, the plaintiff objected to the interception and recording of a telephone conversation in which she told an unidentified caller that her father was not at home. This court did not consider this communication sufficiently private to warrant privacy act protection. "It does not appear that Ms. Kadoranian intended to keep the information . . . 'secret' or that she had any expectation that her conversation was private." *Kadoranian*, 119 Wn.2d at 190.

The Court of Appeals made similar observations in holding that a telephone call made to a telepager did not constitute a private communication in *State v. Wojtyna*, 70 Wn. App. 689, 695-96, 855 P.2d 315 (1993), *review denied*, 123 Wn.2d 1007 (1994). The court reasoned that by transmitting his number into a pager, Wojtyna ran the risk that it would be received by whoever was in possession or that the owner or someone in possession would disclose the contents. "The confidentiality of the transmission was uncertain and there is no reason to find that it was intended to be 'private'." *Wojtyna*, at 696.

While the intent of the participants does not define the scope of a person's private affairs under the state constitution, we do find intent of relevance to that definition. In this case, the Defendant made no attempt to keep his desire to buy drugs a secret from someone he did not know. By deal-

ing with someone other than Garcia-Lopez, the Defendant accepted the risk that his drug purchase would not be confidential. We do not see how the conversation between the Defendant and the detective constituted an unreasonable intrusion into the Defendant's private affairs and thus we find no violation of the state constitution in this case.

In addition to arguing that the detective's act of engaging him in conversation unreasonably intruded upon his private affairs, the Defendant argues that the detective's act of answering the telephone exceeded the scope of the warrant. As noted in the statement of facts, the search warrant in this case did not refer to Garcia-Lopez' telephone, but incorporated by reference an affidavit stating that Garcia-Lopez told the informant to call if he needed cocaine.

■ Initially, we must decide whether the Defendant has the standing to challenge the scope of this warrant. Fourth Amendment rights are personal rights which may not be vicariously asserted. *State v. Foulkes*, 63 Wn. App. 643, 647, 821 P.2d 77 (1991) (citing *Rakas v. Illinois*, 439 U.S. 128, 133, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978)). A defendant may challenge a search or seizure only if he or she has a personal Fourth Amendment privacy interest in the area searched or the property seized. *State v. Simpson*, 95 Wn.2d 170, 174-75, 622 P.2d 1199 (1980); *Rakas*, at 140. The defendant must personally claim a justifiable, reasonable, or legitimate expectation of privacy that has been invaded by governmental action. *Simpson*, at 175 (citing *Smith v. Maryland*, 442 U.S. 735, 740, 61 L. Ed. 2d 220, 99 S. Ct. 2577 (1979)).

■ Because the Defendant's challenge focuses primarily on the state constitution and the crime involved is a possessory offense, we must briefly address the "automatic standing" exception to the general rules stated above. A defendant has automatic standing to challenge a search or seizure if (1) the offense charged involves possession as an "essential" element of the offense; and (2) the defendant was in possession of the contraband at the time of the contested search or seizure. *State v. Zakel*, 119 Wn.2d 563, 568, 834 P.2d 1046

(1992) (citing *Simpson*, at 181). In this case the Defendant fails to meet the second prong of the exception. The contested search or seizure occurred at a different time and location than the Defendant's purchase of the drugs which resulted in the current charge of possession.[1]

Since the automatic standing exception has no application under these facts, we address the Defendant's standing claim under the general rules stated earlier, and note the similarities between this case and *Congote*, where the Fifth Circuit discussed the defendant's standing to challenge the warrantless search of a suspected cocaine dealer's apartment. During the contested search, agents answered several phone calls made by the defendant. These calls resulted in a meeting with the agents and the defendant's arrest on cocaine charges. *Congote*, at 973.

Following his arrest, the defendant moved to suppress the statements made during his meeting with the agents. One issue presented was whether he had standing to assert the violation of the fourth amendment rights of the apartment occupants. The court held that the defendant was without standing because he had no expectation of privacy in the apartment. Indeed, he had never been there and did not know the address. Thus, while the arrest, entry, and answering of the telephone were illegal, these violations did not serve to exclude the Defendant's statements. *Congote*, at 975.

---

[1] As originally promulgated by the federal courts the "automatic standing" exception was intended to prevent a defendant's testimony at a suppression hearing from being used against him at trial. This exception to the standing rules was later abandoned in federal constitutional analysis, in part, because of the United States Supreme Court's holding that a defendant's testimony in a suppression hearing cannot be admitted against him or her at trial. *United States v. Salvucci*, 448 U.S. 83, 89-90, 65 L. Ed. 2d 619, 100 S. Ct. 2547 (1980). A plurality of this court subsequently determined that the automatic standing rule still applies under our state constitution, however, because prior statements made by a defendant are admissible at trial for impeachment purposes in Washington. *Simpson*, at 180. Although the automatic standing rule was rejected by the Court of Appeals in *State v. Jones*, 68 Wn. App. 843, 849, 845 P.2d 1358, *review denied*, 122 Wn.2d 1018 (1993) and *State v. Carter*, 74 Wn. App. 320, 875 P.2d 1 (1994), a majority of this court has not spoken. Further, we cannot resolve the issue in this case because the Defendant here fails to meet the requirements of the exception.

■ We reach the same conclusion regarding standing in this case. While the Defendant may have been more familiar with the drug supplier's residence than was the defendant in *Congote*, we find no reasonable or legitimate expectation of privacy in that residence because of previous drug purchases. *See also Zakel*, at 571 (citing *Rakas*, at 143) (one lawfully in possession or control of property will likely have legitimate privacy expectation by virtue of the right to exclude). Accordingly, we conclude that the Defendant does not have the requisite standing to challenge the scope of the search of the Garcia-Lopez residence.

We thus affirm the trial court's denial of the motion to suppress on the ground that the Defendant had no privacy interest in his telephone conversation with the detective sufficient to find a violation of either article 1, section 7 of the Washington State Constitution or the Fourth Amendment.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.