IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31832-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HEATH TYLER WISDOM, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — We address the legality of a law enforcement officer's search of a zipped shaving kit bag found on the seat of a truck. The officer had arrested the truck's driver because the truck was stolen. The driver informed the officer of methamphetamine being on the seat, but did not consent to a search of his bag. Despite the triviality of the circumstances, this appeal concerns a critical issue surrounding Washington's constitutional prohibition against law enforcement disturbing private affairs "without authority of law." Despite the banality of the facts, this appeal raises a fundamental question concerning whether Washington State will be a police state, in which law enforcement officers employ their own discretion when determining to search property, or a state under the rule of law with magistrates prejudging the validity of police

searches. Defendant Heath Wisdom, the driver of the stolen truck, moved the trial court to suppress as evidence the cornucopia of pharmacopeia found in the shaving kit as fruit of an unlawful warrantless search. The trial court denied the motion and found Wisdom guilty of one count each of possession of cocaine, ecstasy, and heroin, and one count of possession with intent to deliver methamphetamine. We reverse.

## FACTS

Heath Wisdom drove, near Moxee, a Chevrolet pickup truck with an ATV in its back. Someone earlier reported both vehicles as stolen. Yakima County Sheriff Deputy Nate Boyer, while on patrol, passed the pickup, and Boyer's automated license plate reader identified the pickup as stolen. Deputy Boyer pulled Wisdom over and arrested him for possession of a stolen vehicle. Boyer handcuffed Wisdom, searched his body, and escorted him to the patrol vehicle. Boyer found on Wisdom's body a pipe that Wisdom admitted he used for smoking methamphetamine.

Deputy Nate Boyer advised Heath Wisdom of his *Miranda* rights, which the latter waived. Boyer asked if there were drugs in the truck, and Wisdom replied that methamphetamine lay on the front seat. Boyer looked inside the cab of the truck and saw filters, some cleaner, and a black "shaving kit type" bag. Clerk's Papers (CP) at 24. Boyer concluded that the bag contained the methamphetamine. The toiletry bag was closed, but Boyer espied money through the mesh side of the bag. We do not know if an additional lining partitioned the money inside the mesh from the remaining contents of the bag.

2

After photographing the truck, Deputy Boyer removed the bag from the vehicle, opened it, and found methamphetamine, cocaine, ecstasy, heroin, drug paraphernalia, and two thousand seven hundred dollars in cash. Heath Wisdom told Deputy Boyer that he owned the black bag. Deputy Boyer had not asked Wisdom if he owned the black bag before searching inside the bag.

Deputy Boyer never obtained a warrant for his search, nor did he request Heath Wisdom's consent before opening the black bag. Law enforcement impounded the truck and ATV, since the legal owner could not be located.

PROCEDURE

The State of Washington charged Heath Wisdom with three counts of possession of a controlled substance in violation of RCW 69.50.4013(1) (cocaine, ecstasy, and heroin) and one count of possession of a controlled substance with intent to deliver under RCW 69.50.401(1) (methamphetamine). Wisdom moved under CrR 3.6 to suppress all evidence found in the black toiletry bag. Wisdom argued: (1) Deputy Boyer's warrantless search of the truck and the bag did not fall within the exceptions allowing a search incident to arrest, (2) Boyer's "inventory search" of the black bag was actually an investigatory search for evidence of a crime, and (3) Wisdom's concession that there was methamphetamine in the truck was not consent to search the vehicle or the bag. The State responded that: (1) the impound and search of the vehicle was lawful, and (2) the search of the black bag was a lawful inventory search. The State conceded that Wisdom's statement to Boyer did not amount to an implied consent to search.

3

At the suppression hearing, Deputy Nate Boyer testified that he opened and searched the black bag pursuant to department policy, and in order to protect against potential liability claims for loss of property:

> [PROSECUTOR]: Ok. What else did you do?
> BOYER: I took custody of a black bag. Which was seated on the passenger side of the vehicle.
> [PROSECUTOR]: Why?
> BOYER: It obviously contained a large amount of money. Which was clearly visible from the outside of the vehicle looking in. And Mr. Wisdom had previously stated that there was a large amount of methamphetamine in the vehicle.
> [PROSECUTOR]: Is this type . . . let me back up. What did you? What was your purpose for seizing that black bag?
> BOYER: It appeared to be an item of high value. Which any time there is something of high value it's never left in an impounded vehicle. It's placed into property and then claimed by the rightful owner . . . it also appeared to be a narcotic sales type bag. Which contained a large amount of drugs.
> [PROSECUTOR]: Is this any different from a regular inventory search?
> BOYER: No, it is not.
> [PROSECUTOR]: Could you see anything else from the outside of the black bag?
> BOYER: I could see that there was a large amount of money in the side of the bag. It appeared to be bindles [sic] of money stacked individually. And then also checks could also be seen. Based on the amount of money I could see, it was apparent that there was a large sum of money there.

Report of Proceedings (RP) at 8-9.

On cross-examination, Deputy Boyer admitted that he suspected the black bag contained drugs, but he did not obtain a warrant prior to opening and searching the bag:

> [DEFENSE COUNSEL]: Ok. Now you called this an inventory search. Is that correct?
> BOYER: Correct.

4

[DEFENSE COUNSEL]: Ok. Let me ask you this. You didn't have a warrant?

BOYER: No, I did not.

[DEFENSE COUNSEL]: You did not call for a telephonic warrant. Is that correct?

BOYER: That's correct.

[DEFENSE COUNSEL]: You know how to call for a telephonic warrant?

BOYER: Yes I do.

[DEFENSE COUNSEL]: Ok. Was there anything preventing you from calling for a telephonic warrant?

BOYER: No, there was not.

[DEFENSE COUNSEL]: Ok. And my client did not give you consent to search that vehicle. Is that correct?

BOYER: I did not ask his consent. No.

. . . .

BOYER: When asked if there was any meth in the vehicle, Wisdom told me there was quite a bit of meth in the truck.

[DEFENSE COUNSEL]: And then the next sentence please.

BOYER: Wisdom told me it was sitting on the seat of the truck.

. . . .

[DEFENSE COUNSEL]: And that bag had . . . the only thing you could see visible on that bag was the money and the checks that you previously described?

BOYER: Correct.

[DEFENSE COUNSEL]: Ok. And then you went in to the truck and you removed . . . at some point you went into the truck and you removed that bag?

BOYER: Correct.

[DEFENSE COUNSEL]: Ok. And you opened that bag and you discovered, per your report; approximately an ounce of methamphetamine, marijuana, baggies, and other drugs?

BOYER: Correct.

[DEFENSE COUNSEL]: Ok. As part of your inventory search. Correct?

BOYER: Correct.

[DEFENSE COUNSEL]: Ok. So you knew there were drugs in the car? Per my client's statement.

BOYER: He stated that there were drugs in the car. Yes.

[DEFENSE COUNSEL]: Ok. And you knew that they were most likely contained, if they were in that truck, within that black bag. Correct?

5

BOYER: It would appear. Based on my observation, the black [bag] can handle a large amount of money and it was found to contain a large amount of drugs as well.

RP at 11-14.

On redirect examination, Deputy Nate Boyer stated that he did not seek a search warrant because he instead performed an inventory search of the vehicle and collected property during the inventory. But on recross-examination, Boyer encountered difficulty answering yes or no to whether he believed he would find drugs in the black bag when he started his search:

[DEFENSE COUNSEL]: Ok. Miss prosecutor asked you . . . her quote was, "somewhere in the vehicle there were drugs". He actually told you they were on the front seat. Is that correct? Per your report.

BOYER: He did say they were sitting on the seat of the truck.

[DEFENSE COUNSEL]: All right. . . . Miss prosecutor also asked if you were looking for contraband. And your response was, "documenting the contents of that truck." You had a strong reason to believe there was contraband in that vehicle? Is that correct? Based on my client's known statements to you?

BOYER: Based on the statements, I believed there [were] probably drugs in the vehicle.

[DEFENSE COUNSEL]: Ok. So you were also looking for those drugs. Is that correct?

BOYER: Part of the . . . when you inventory the vehicle . . .

[DEFENSE COUNSEL]: Yes or no.

BOYER: You're documenting what's there. So yes, I would be looking for . . .

[DEFENSE COUNSEL]: I want to object.

BOYER: Whatever was there.

JUDGE: Ok. Go ahead and ask the question again.

[DEFENSE COUNSEL]: Thank you. You were also looking, yes or no, you were also looking for suspected methamphetamine in that truck. Is that correct?

BOYER: I guess in the final sentence. Yes, I was looking for whatever would be there. Yes.

[DEFENSE COUNSEL]: Ok. Believing there to be methamphetamine in that truck.

[PROSECUTOR]: Objection Your Honor. He's badgering the witness.

JUDGE: Well I think that he's trying to get a yes or no answer. And so far we haven't yet gotten the yes or no. You may ask your question again.

[DEFENSE COUNSEL]: Ok. Believing that there was methamphetamine in that truck. Correct?

BOYER: Mr. Wisdom's statement was that there was methamphetamine in the vehicle.

[DEFENSE COUNSEL]: Ok. So that would be a yes. You were also looking for methamphetamine?

BOYER: I was looking for what was in the vehicle. I was documenting the contents of the truck. If that included methamphetamine, then yes, I was looking for that.

[DEFENSE COUNSEL]: Ok. Let me ask you this. . .

BOYER: I was not specifically searching for methamphetamine. If that's what you're trying to ask . . .

[DEFENSE COUNSEL]: Well let me ask you this; the discovery of that methamphetamine just wasn't a fortuitous event that you happened to come across. Correct?

BOYER: It was not a shock. No.

[DEFENSE COUNSEL]: Ok. You believed there to be methamphetamine in that vehicle. Correct? Based on my client's statement to you. Yes?

[PROSECUTOR]: Objection, Your Honor. Asked and answered multiple times.

JUDGE: I think it's clear that he knew that there was drugs in there. The defendant stated that it would be on the seat of the truck. And he described what items were on the seat of the truck. So I think that even I can connect the dots there.

RP at 19-21.

The trial court denied Heath Wisdom's motion to suppress. In so ruling, the court did not address whether the search of the black bag was a legitimate inventory search. Instead, the trial court held that Wisdom no longer had a reasonable expectation of

7

privacy when he informed Deputy Boyer of methamphetamine on the truck's seat. The

court wrote:

> When a person tells law enforcement that drugs are in a specific
> area, it is unreasonable for that person to have any expectation of privacy in
> that limited area. Here, the intrusion was minimal, and the defendant no
> longer had a reasonable expectation of privacy in the bag.

CP at 39.

## LAW AND ANALYSIS

Issue 1: Whether Heath Wisdom holds standing to challenge the search of the

shaving kit bag?

Answer 1: This court should not address standing since the State does not argue

that Wisdom lacked standing.

The dissent devotes pages to assessing the standing of Heath Wisdom to challenge

the search of the black bag. The State has not argued that Wisdom lacked standing to

assert a constitutional challenge to the search. Wisdom lacks notice that this court might

consider his standing and thus has no opportunity to address the issue. "[T]here are

obvious due process problems in affirming a trial court ruling in a criminal proceeding on

an alternative theory against which the defendant has had no opportunity to present an

argument." *State v. Adamski*, 111 Wn.2d 574, 580, 761 P.2d 621 (1988).

Any examination of Heath Wisdom's standing violates principles of appellate

jurisprudence. This court does not review issues not argued, briefed, or supported with

citation to authority. RAP 10.3; *Valente v. Bailey*, 74 Wn.2d 857, 858, 447 P.2d 589

(1968); *Avellaneda v. State*, 167 Wn. App. 474, 485 n.5, 273 P.3d 477 (2012). This court

should not raise new issues without first giving the parties the chance to brief them. RAP

12.1.

The dissent claims that the trial court denied Heath Wisdom's motion to suppress

on the basis of lack of standing. The trial court held that Wisdom lacked an expectation

of privacy but did not expressly root the decision on lack of standing. The State did not

argue standing below. The State, as it does on appeal, relied on the inventory and the

search incident to arrest exceptions to the warrant requirement.

The dissent is also wrong that Heath Wisdom lacks standing. The dissent cites

propositions from a number of decisions, but fails to synthesize the propositions when

adjudging Wisdom to lack standing. Under Washington's liberal constitution, a

defendant has automatic standing even if he might technically lack a privacy interest in

property. *State v. Evans*, 159 Wn.2d 402, 407, 150 P.3d 105 (2007). A defendant has

automatic standing if: (1) possession is an essential element of the offense, and (2) the

defendant possessed the contraband at the time of the contested search of seizure. *State

v. Evans*, 159 Wn.2d at 407; *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002);

*State v. Goucher*, 124 Wn.2d 778, 788, 881 P.2d 210 (1994). The doctrine of automatic

standing ensures that the State will not assume contradictory positions by arguing at a

suppression hearing that the defendant did not have possession of the property and

therefore lacked Fourth Amendment privacy interests and then arguing at trial that the

defendant is guilty of unlawful possession of the property. *State v. Simpson*, 95 Wn.2d

170, 175, 622 P.2d 1199 (1980) (plurality). The doctrine also allows a defendant to claim in a suppression hearing possession in order to establish standing without the concession being used against him at trial on the issue of possession. *State v. Simpson*, 95 Wn.2d at 175. Contrary to the assertion of the dissent, each purpose behind the rule need not be present for automatic standing to occur. The defendant's concession, at the scene of the seizure, of ownership of the controlled substance does not negate standing.

The State charged Heath Wisdom with possessory crimes. Although he lacked possession of the bag at the precise time of the search, he had possession when Deputy Boyer arrested him. In *State v. Jones*, 146 Wn.2d 328 (2002), the defendant sat in the officer's patrol car when the officer searched a purse lying in the defendant's stopped car. The court granted Kurt Jones standing to challenge the search since, despite his repose in the patrol car, he remained in constructive possession of the contents found in his car.

The dissent falsely asserts that Heath Wisdom denied owning anything inside the truck other than the methamphetamine and claims that Wisdom did not assert ownership of the black bag until after the inventory search. The false assertion may be critical to the dissent's wrong conclusion. The dissent fails to recognize that Deputy Nate Boyer never earlier asked Wisdom if he owned the bag. Thus, Wisdom never denied ownership of the bag. He never disclaimed ownership of anything. Boyer searched the bag because he believed he would find Wisdom's methamphetamine therein. Boyer considered the bag as one used for narcotics sales. Boyer reasonably believed Wisdom to own the bag.

The dissent relies on *State v. Zakel*, 119 Wn.2d 563, 571, 834 P.2d 1046 (1992),

for the proposition that standing is determined at the time of search. Although the *Zakel* court noted that Darcy Zakel did not possess the vehicle at the time of the search, the court did not expressly hold that standing is determined at the time of search. Anyway, the law supports the conclusion that Heath Wisdom possessed the shaving kit bag at the time of the search.

Issue 2: Whether the search incident to arrest exception excused Deputy Nate Boyer from obtaining a search warrant before unzipping and perusing the inside of the shaving kit bag?

Answer 2: No.

Sheriff Deputy Nate Boyer garnered no search warrant before unzipping the black shaving kit bag. He could have and should have obtained a warrant. Boyer could have inventoried the bag as one unit, retained the bag, and searched inside it after obtaining a warrant. Because only a judicial officer upon probable cause issues a warrant, warrants are a critical feature of American law enforcement.

Deputy Boyer's failure to obtain a search warrant leads us to peruse familiar jurisprudence about warrantless searches. The lack of a warrant also prompts reflection on the importance of judicial warrants and the nature of law enforcement, our criminal justice system, and order in our society.

Searches conducted outside the judicial process, without prior approval of a judge or magistrate, are per se unreasonable under article I, section 7 of the Washington State Constitution, subject only to a few specifically established and well delineated

11

exceptions. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002). Washington's

Constitution provides: "[n]o person shall be disturbed in his private affairs, or his home

invaded, without authority of law." WASH. CONST. art. I, § 7. Although the Washington

Constitution, unlike the Fourth Amendment to the federal constitution, does not mention

warrants, state law also presumes that a law enforcement officer will obtain a judicial

warrant before a search. A valid warrant constitutes "authority of law" under article I,

section 7. *State v. Valdez*, 167 Wn.2d 761, 771-72, 224 P.3d 751 (2009).

The unique language of article I, section 7, generally provides greater protection to

persons under the Washington Constitution than the Fourth Amendment provides. *State

v. Snapp*, 174 Wn.2d 177, 187, 275 P.3d 289 (2012). The Washington Constitution

provides added safeguards, in part, because unlike the Fourth Amendment, article I,

section 7 clearly recognizes an individual's right to privacy with no express limitations.

*State v. Ferrier*, 136 Wn.2d 103, 110, 960 P.2d 927 (1998). This broader reading of

individual solitude extends to the area of search warrants. *State v. Snapp*, 174 Wn.2d at

187. Therefore, we rest our decision on state law.

On appeal, the State neither argues that Heath Wisdom consented to the search nor

his acknowledgement of the presence of methamphetamine vitiated an expectation of

privacy inside the toiletry bag. The trial court relied on the narrow ground that Heath

Wisdom no longer held a reasonable expectation of privacy because of his inculpatory

remark of methamphetamine lying on the pickup seat. We agree with the State's implied

concession that the trial court's basis for the ruling was error. Article I, section 7, unlike

the Fourth Amendment, is not grounded in notions of reasonableness. *State v. Snapp*, 174 Wn.2d at 194. Rather, it prohibits any disturbance of an individual's private affairs without authority of law. *State v. Valdez*, 167 Wn.2d 761, 773, 224 P.3d 751 (2009).

The decision to invade the privacy of an individual's personal effects, absent extraordinary circumstances, should be made by a neutral magistrate rather than an agent of the executive. *Johnson v. United States*, 333 U.S. 10, 13-14, 68 S. Ct. 367, 92 L. Ed. 436 (1948). Even though the issuance of a warrant by a judicial officer is inevitable, the evaluation by a neutral magistrate is needed. *United States v. Chadwick*, 433 U.S. 1, 15-16, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977), *abrogated by California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991). Individual freedoms will best be preserved through a separation of powers and divisions of functions among the different branches and levels of government. *United States v. United States District Court*, 407 U.S. 297, 317, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972).

Searches conducted without warrants have been held unlawful notwithstanding facts unquestionably showing probable cause. *Agnello v. United States*, 269 U.S. 20, 33, 46 S. Ct. 4, 70 L. Ed. 145 (1925). The mere fact that law enforcement may be made more efficient also can never by itself justify disregard of the Fourth Amendment, Washington's article I, section 7, analog. *Mincey v. Arizona*, 437 U.S. 385, 393, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *Coolidge v. New Hampshire*, 403 U.S. 443, 481, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). The investigation of crime would always be simplified if warrants were unnecessary. *Mincey v. Arizona*, 437 U.S. at 393. But the Fourth

13

Amendment reflects the view of those who wrote the Bill of Rights that the privacy of a person's home and property may not be totally sacrificed in the name of maximum simplicity in enforcement of the criminal law. *United States v. Chadwick*, 433 U.S. at 6-11 (1977). The judicial warrant has a significant role to play in that it provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer. *United States v. Chadwick*, 433 U.S. at 9. Once a lawful search has begun, it is also far more likely that it will not exceed proper bounds when it is done pursuant to a judicial authorization particularly describing the place to be searched and the persons or things to be seized. *United States v. Chadwick*, 433 U.S. at 9. Although these principles arise from federal cases construing the United States Constitution's Fourth Amendment, Washington law adds greater protections against searches and seizures, and Washington courts rely on the principles.

Law enforcement is an honorable profession that deserves the highest respect from the citizenry and judicial system, and the overwhelming majority of law enforcement officers are honest and diligent professionals. Law enforcement officers risk and sometimes sacrifice their lives for our safety. Nevertheless, law enforcement officers are engaged in the "often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. at 14. Police officers hold the power to destroy lives and reputations, and even the best of officers may sometimes cut corners in violation of constitutional rights. The nature of law enforcement work can lead to a jaundiced and cynical view of

14

human nature and an unhealthy distrust of citizens. Recent events have challenged the credibility of law enforcement officers and dinted the public trust of police officers. Review of police conduct by a neutral magistrate can only improve that trust.

Boston Red Sox outfielder Ted Williams, the last player to bat over .400, possessed exceptional eyesight. He could follow the trajectory and instantaneously pinpoint the position of a fastball better than any umpire. He also was a fair and honest ball player. Nevertheless, American League rules did not allow Williams to call his own balls and strikes. The appearance of fairness demanded employment of a neutral umpire. Fairness demands that, except in emergency circumstances, a review by a neutral magistrate precede a search by a law enforcement officer of private possessions.

Courts treat "luggage and other closed packages, bags, and containers" as unique for purposes of police searches. *United States v. Acevedo*, 500 U.S. 565, 571, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991). Washington courts recognize an individual's privacy interest in his closed luggage, whether locked or unlocked. *See State v. Houser*, 95 Wn.2d 143, 157, 622 P.2d 1218 (1980). Exposure of the container to the public does not permit police to search inside the container. *United States v. Chadwick*, 433 U.S. at 13 n.8 (1977).

A person does not rummage through a woman's purse, because of secrets obtained therein. A man's shaving kit bag can be likened to a woman's purse. The kit bag could obtain prescription drugs, condoms or other items the owner wishes shielded from the public. The bag is intended to safeguard the privacy of personal effects. Literature,

15

medicines, and other things found inside a bag may reveal much about a person's activities, associations and beliefs. *California Bankers Ass'n v. Schultz*, 416 U.S. 21, 78-79, 94 S. Ct. 1494, 39 L. Ed. 2d 812 (1974) (Powell, J., concurring).

In *State v. Houser*, 95 Wn.2d 143, 622 P.2d 1218 (1980), our high court found a privacy interest in a toiletry kit, which presumably equates to a shaving kit. Other jurisdictions have found a privacy interest in a shaving kit under various circumstances. *Fixel v. Wainwright*, 492 F.2d 480, 482 (5th Cir. 1974); *State v. Sargent*, 2009 ME 984 A.2d 831, 834-35; *Marganet v. State*, 927 So. 2d 52, 61-62 (Fla. Dist. Ct. App. 2006); *State v. Beresford*, 156 Vt. 333, 336, 592 A.2d 882 (1991); *Moore v. State*, 268 Ark. 171, 175-76, 594 S.W.2d 245 (1980). In *Fixel v. Wainwright*, the court suppressed evidence of heroin found in a shaving kit bag found in the defendant's home backyard. The law enforcement officers obtained a search warrant for the home, but the court considered the bag to be outside the scope of the warrant and entitled to privacy protections.

In *Moore v. State*, the state of Arkansas argued that officers could search a shaving kit found in the defendant's car after the officers stopped the car and arrested the defendant. The Arkansas Supreme Court held that a warrant was necessary, and the court suppressed evidence found in the kit. The court likened the shaving kit to luggage.

Washington allows a few jealously and carefully drawn exceptions to the warrant requirement, which include exigent circumstances, searches incident to an arrest, inventory searches, plain view searches, and *Terry* investigative stops. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Garvin*, 166 Wn.2d 242,

16

249, 207 P.3d 1266 (2009). The State bears the burden of demonstrating that a warrantless seizure falls into a narrow exception to the rule. *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). Most decisions pay only lip service to these oft-quoted principles. We take the principles seriously and consider them outcome determinative in this appeal.

The State contends that Nate Boyer's opening of the zipped bag passes muster as a legitimate search incident to arrest and as a proper inventory search. We independently analyze whether the warrantless search was justified under the search incident to arrest exception and the inventory search exemption. We rule that neither exception warranted the search of the toiletry bag.

Under both a Fourth Amendment analysis and an independent state constitution analysis, a warrantless vehicle search incident to arrest is authorized when the arrestee would be able to obtain a weapon from the vehicle or reach evidence of the crime of arrest to conceal or destroy it. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710 L. Ed. 2d 485 (2009); *State v. Louthan*, 175 Wn.2d 751, 754, 287 P.3d 8 (2012). In *Gant*, the United States Supreme Court upheld the Arizona Supreme Court's determination that the warrantless search of an arrestee's car did not fall under the "search incident to arrest" exception to the warrant requirement, when the arrestee had already been secured in the back of a police car and there was no immediate need to protect officers at the scene or to preserve evidence. *Gant*, 556 U.S. at 393-94. The Court explained that such searches are permissible only if the arrestee is within reaching distance of the passenger compartment

17

at the time of the search, or it is reasonable to believe the vehicle contains evidence of the offense of arrest. *Gant*, 556 U.S. at 351. The search incident to arrest exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. *Gant*, 556 U.S. at 338.

Heath Wisdom sat handcuffed in the patrol car at the time of the seizure and search of the toiletry bag. He lacked access to the bag. Thus, the State of Washington relies on the second permissible ground in *Gant* behind a search incident to arrest: preservation of evidence of the crime for which the suspect is arrested. The State emphasizes that Deputy Boyer observed money through the closed bag and thought the cash could be related to the theft of the vehicle. This argument might succeed under the United States Constitution, but fails under our state constitution.

*State v. Snapp*, 174 Wn.2d 177, 275 P.3d 289 (2012) controls. In *Snapp*, our Supreme Court addressed the issue of whether an equivalent to *Gant*'s second exception applies under article I, section 7 of the Washington Constitution. The court answered "no." The protections guaranteed by article I, section 7 are qualitatively different from those under the Fourth Amendment. *Snapp*, 174 Wn.2d at 187. Based on our state constitution, our high court disapproves expansive application of the search-incident-to-arrest exception to the period of time after the arrestee is secured and attendant risks to officers have passed. *Snapp*, 174 Wn.2d at 189. When a search can be delayed without running afoul of concerns for officer safety or to preserve evidence of the crime of arrest from concealment or destruction by the arrestee, and does not fall within another

18

applicable exception, the warrant must be obtained. *Snapp*, 174 Wn.2d at 195. The police officer can prevent destruction of evidence by holding the bag as a sealed unit until obtaining a warrant.

Issue 3: Whether Deputy Nate Boyer's inventorying of the pickup's contents excused the need to obtain a search warrant?

Answer 3: No.

To justify an inventory search, the State of Washington argues that the search was reasonable because Boyer observed cash through a mesh side of the closed bag and only opened the bag to count the money for the purpose of protecting against future liability claims. Heath Wisdom does not dispute that Deputy Boyer could impound the truck or that the officer could seize the bag as one sealed unit. He complains about the unzipping of the bag.

Inventory searches, unlike other searches, are not conducted to discover evidence of crime. *State v. Houser*, 95 Wn.2d 143, 153, 622 P.2d 1218 (1980). Accordingly, a routine inventory search does not require a warrant. *United States v. Chadwick*, 433 U.S. at 10 n.5 (1977); *State v. Houser*, 95 Wn.2d at 153.

The Washington Supreme Court has held that a noninvestigatory inventory search of an automobile is proper when conducted in good faith for the purposes of: (1) finding, listing, and securing from loss during detention property belonging to a detained person; or (2) protecting police and temporary storage bailees from liability due to dishonest claims of theft. *State v. Houser*, 95 Wn.2d at 154; *State v. Gluck*, 83 Wn.2d 424, 428,

19

518 P.2d 703 (1974); *State v. Montague*, 73 Wn.2d 381, 385-87, 438 P.2d 571 (1968). In sanctioning such a search, however, our high court recognizes the possibility for abuse and has required that the State show that the search was conducted in good faith and not as a pretext for an investigatory search. *Montague*, 73 Wn.2d at 385. As a further protection against abuse, the scope of the search should be limited to those areas necessary to fulfill its purpose. *State v. Houser*, 95 Wn.2d at 155. Accordingly, the inventory should be limited to protecting against substantial risks to property in the vehicle and not enlarged on the basis of remote risks. *State v. Houser*, 95 Wn.2d at 155. While Washington courts recognize inventory searches may serve legitimate government interests, these interests are not limitless and do not outweigh the privacy interests of Washington citizens. *State v. White*, 135 Wn.2d 761, 771, 958 P.2d 982 (1998).

In *State v. Dugas*, 109 Wn. App. 592, 597, 36 P.3d 577 (2001), this court wrote:

> The inventory search is a recognized exception because, unlike a probable cause search and a search incident to arrest, the purpose of an inventory search is not to discover evidence of a crime, but to perform an administrative or caretaking function. Knowledge of the precise nature of the property protects against claims of theft, vandalism, or negligence.

Whether an inventory prevents or even lessens false charges of theft can be questioned. Assuming Washington has a dishonest officer, the officer can take an accused's valuable object or money and not include it on his inventory list. A dishonest arrestee could claim she maintained a valuable jewel in her purse and the officer, when listing inventory, failed to list the jewel. *Houser*, 95 Wn.2d at 155 n.3. An inventory reduces false charges only when both parties are present and participate in the inventory.

20

Officers rarely wish for the arrestee to participate in any inventory. Nate Boyer did not conduct his inventory in the presence of Heath Wisdom or any other person.

In at least three decisions, Washington courts suppressed evidence found in a closed container on the ground that the officer could have merely listed the container on the inventory rather than opening the container and listing each individual item inside. *State v. White*, 135 Wn.2d 761 (1998); *State v. Houser*, 95 Wn.2d 143 (1980); *State v. Dugas*, 109 Wn. App. 592 (2001). The decision most on point is *State v. Houser*. Our Supreme Court suppressed evidence of drugs obtained through a warrantless search of a toiletry bag located in the locked trunk of an arrestee's impounded vehicle. The Court held "where a closed piece of luggage in a vehicle gives no indication of dangerous contents, an officer cannot search the contents of the luggage in the course of an inventory search unless the owner consents." *Houser*, 95 Wn.2d at 158. A citizen places personal items in luggage in order to transport the items in privacy and with dignity.

The dissent distinguishes *State v. Houser* on the ground that officers seized Houser's toiletry kit from a locked trunk and Heath Wisdom's kit lay on the front seat of the pickup cab. Although the *Houser* court ruled, in part, on the basis that Houser's trunk was locked, the court also declared the search unlawful because of the nature of the shaving kit. The kit was not locked. That exact reasoning applies here.

Four years later, in *State v. White*, 135 Wn.2d 761 (1998), the Supreme Court suppressed evidence obtained through a warrantless inventory search of a locked trunk, which police opened by pressing a release lever located in the car's glove compartment.

21

The Court expressly reaffirmed *Houser*, noting "'Houser is a simple, comprehensive and workable decision . . . it lacks neither in logic nor common sense'" *White*, 135 Wn.2d at 772 (quoting *State v. White*, 83 Wn. App. 770, 785, 924 P.2d 55 (1996) (Becker, J., dissenting)).

*State v. Dugas*, 109 Wn. App. 592 (2001) completes our trilogy. In *Dugas*, this court held unreasonable a warrantless search of a closed key ring pouch found in the jacket an arrestee had shed and lay on the hood of a car prior to being arrested. While impounding the jacket after the arrestee had been escorted from the scene, officers discovered and opened the pouch without consent or a warrant and discovered cocaine inside. In holding the search of the pouch unreasonable, the court noted that Parris Dugas was no longer present, he did not consent, and there was no indication of dangerous contents.

The State relies on *State v. Smith*, 76 Wn. App. 9, 882 P.2d 190 (1994). A crucial distinction between *Smith*, on the one hand, and *Houser*, *White*, and *Dugas*, on the other hand, is the procedural context in which the respective inventory searches took place. The police searched Ethel Mae Smith's purse as part of its routine booking procedure, while she was present, and where she could have asked someone to take her purse prior to her booking. The view inside Heath Wisdom's toiletry bag was not during a station house booking inventory. Assuming *Smith* to be relevant to our facts, the Supreme Court decisions in *State v. White* and *State v. Houser* assume priority.

22

The State emphasizes that the Yakima County sheriff policies authorized, if not demanded, that Deputy Nate Boyer conduct an inventory of the contents of the bag at the scene of the arrest. Some decisions consider the fulfillment of department policy as relevant to the legitimacy of the search. *State v. Dugas*, 109 Wn. App. at 597 (2001). An internal police department policy should not, however, justify an unconstitutional search. The permitted extent of an inventory search pursuant to police department policy must be restricted to effectuating the purposes that justify the exception warrant clause. *State v. Dugas*, 109 Wn. App. at 597-98. An improper search cannot be legitimized by conducting it pursuant to standard police procedures. *State v. Houser*, 95 Wn.2d at 154 (1980).

Incident to his argument that Heath Wisdom lacked standing to challenge the search of the bag, the dissent also argues that a thief lacks a privacy interest in stolen property that society should recognize as reasonable. We agree, but the search at issue was the search of Heath Wisdom's shaving bag. The bag was not stolen. The status of the Chevrolet pickup being a stolen vehicle does not reduce Heath Wisdom's privacy rights in the shaving kit bag. In *State v. Simpson*, 95 Wn.2d 170, 622 P.2d 1199 (1980), our state high court suppressed Jerry Simpson's possessions found inside a stolen Chevrolet pickup truck. The court denied the State's contention that one lacks privacy rights because the search occurred inside a stolen vehicle.

The dissent wrongly asserts that Heath Wisdom only claimed ownership to the methamphetamine, contraband in which he could have no privacy interest that our society

23

would recognize as reasonable. This assertion ignores that Wisdom claimed ownership of the shaving bag and the methamphetamine lay inside the bag. The dissent may propose a rule that no defendant can ever hold a privacy interest in an unlawful substance, no matter if the substance rests concealed in a container, because of the evil and illegal nature of the substance. Such a rule would moot all search and seizure law with regard to illegal drugs and always justify the seizure of controlled substances.

The State contends that a ruling in its disfavor means this court would mandate that Deputy Boyer have left a bag of cash and perhaps drugs sitting on the seat of a stolen truck, with no key, with a stolen ATV in the back, at night, in a public parking lot. Our ruling does not command these silly consequences. Nate Boyer could have listed the toiletry bag as a whole in his inventory and then sought a search warrant to open the bag. He could have sought a telephonic warrant before leaving the scene of the arrest. Once Boyer seized the bag, the bag would not return to the control of Heath Wisdom such that Wisdom could destroy the methamphetamine. Boyer could retain the bag until he obtained a search warrant. Thus, no exigent circumstances arose.

In *Arkansas v. Sanders*, 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979), *abrogated by California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991) the United States Supreme Court suppressed evidence of the contents of an automobile trunk. The Court noted the validity of the seizure of the trunk, but ruled that the officers should have sought a warrant before opening the trunk and inventorying its contents.

The dissent predicts and laments that, if Deputy Boyer sought a search warrant, a judge would deny the warrant. The dissent mentions that Boyer only saw money inside the bag's mesh and possessing money is not a crime. This prediction is baseless since Heath Wisdom earlier told Nate Boyer that methamphetamine lay on the front seat of the pickup truck and the only container on the seat that could hold the methamphetamine was the shaving kit bag. We doubt a magistrate would deny a search warrant with such evidence. An assumption of a denial of the application, however, defeats, not supports the dissent's argument. This assumption necessitates an underlying supposition that Deputy Boyer lacked probable cause to search inside the bag. If Deputy Boyer lacked probable cause, he should not have searched inside and the evidence of the contents inside should not be used against him in a prosecution.

## CONCLUSION

The warrantless search inside of Heath Wisdom's black bag was not justified by either a search incident to arrest or an inventory search. We reverse the trial court's denial of Heath Wisdom's motion to suppress evidence, reverse his four convictions, and dismiss all charges filed against him.

_____
Fearing, J.

I CONCUR:

_____
Siddoway, C.J.

No. 31832-0-III

KORSMO, J. (dissenting) — It boggles the mind that an officer cannot look inside an unlocked bag visibly full of money while inventorying the contents of a stolen truck. Nonetheless, the majority reaches that result in the absence of relevant authority by expanding dictum in an opinion that itself relied on subsequently rejected case law. For these, and other, reasons, I dissent. A thief does not have a privacy interest in stolen property that society should recognize as reasonable and, thus, Mr. Wisdom had no standing to contest the inventory search. But, even if there was standing, the officer could look through an unlocked bag left on the front seat of the stolen truck. Because the officer properly looked inside the bag while conducting a lawful inventory search that Mr. Wisdom lacked standing to challenge, the convictions should be affirmed.

Initially, I note my agreement with the majority that the trial court erred in stating that Mr. Wisdom lacked an "expectation of privacy" in the gym bag full of money and drugs. Expectation of privacy is a Fourth Amendment concern. *State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d 151 (1984). Under article I, § 7, the consideration is whether a defendant's "private affairs" have been invaded. *Myrick*, 102 Wn.2d at 510. That term "focuses on those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant." *Id.* at 511. Mr. Wisdom argues this case on the basis of our state constitution rather than the federal constitution. The question for us then is whether he had any privacy interest in the

contents of the stolen truck that he "should be entitled to hold, safe from governmental trespass absent a warrant." *Id.*

Washington initially granted automatic standing under article I, § 7 in criminal cases when a defendant was charged with a possessory offense and was in possession of the item at the time of the search. *E.g., State v. Simpson*, 95 Wn.2d 170, 181, 622 P.2d 1199 (1980) (plurality). Subsequently, our court has recognized that typically it is the defendant's "private affairs" that govern whether standing exists. *State v. Carter*, 127 Wn.2d 836, 848-49, 904 P.2d 290 (1995). Nonetheless, the concept of automatic standing "still maintains a presence in Washington." *State v. Williams*, 142 Wn.2d 17, 22, 11 P.3d 714 (2000).[1] Under either approach, Mr. Wisdom lacks standing to challenge the inventory search of the bag.

It is an open question whether or not a defendant has any privacy interest in a stolen vehicle or its contents. *See State v. Zakel*, 119 Wn.2d 563, 571, 834 P.2d 1046 (1992).[2] I would answer that question "no" because one reason for an inventory search is

---

[1] Because *Simpson* was only a plurality opinion, subsequent cases left open the question of whether automatic standing applied under our state constitution. *E.g., Carter*, 127 Wn.2d at 836, *State v. Goucher*, 124 Wn.2d 778, 787-88, 881 P.2d 210 (1994); *State v. Zakel*, 119 Wn.2d 563, 571, 834 P.2d 1046 (1992). After *Williams*, our court twice applied automatic standing, implicitly adopting it under our constitution. *State v. Evans*, 159 Wn.2d 402, 406-07, 150 P.3d 105 (2007); *State v. Jones*, 146 Wn.2d 328, 331-35, 45 P.3d 1062 (2002). *Jones* expressly limited the doctrine to the situation where a defendant would be forced to either incriminate himself by claiming ownership at a suppression hearing or forego bringing a suppression challenge. *Id.* at 334.

[2] The *Zakel* court also declined to decide if automatic standing applied since the defendant was not in possession of vehicle at time of police search.

2

to protect a vehicle owner's property. *State v. White*, 135 Wn.2d 761, 769-70, 958 P.2d

982 (1998). I would hold that a thief has no privacy interest that overrides that of the true

owner. An inventory search to protect and recover the true owner's property should not

be constrained by a thief's assertions concerning which of the contents are his and which

are not.

On this record, I would additionally note that Mr. Wisdom never claimed

ownership of anything other than the methamphetamine[3] on the front seat, contraband in

which he could have no privacy interest that our society would recognize as reasonable.

Thus, although the trial court used the wrong verbiage, the judge reached the correct

result. Mr. Wisdom lacked standing to challenge the inventory search.[4]

---

[3] The majority mistakenly asserted that Mr. Wisdom claimed ownership of the bag as well as the methamphetamine. He did not. After the inventory turned up the methamphetamine, Mr. Wisdom admitted that the bag was his. Report of Proceedings (RP) at 17. However, prior to the search, all he claimed was the methamphetamine. RP at 5 ("he stated that there was more methamphetamine in the pickup"), RP at 12-14, 19-21. He did not claim ownership of anything else in the truck. RP at 17. Standing is judged at the time of the search, not after the fact. *E.g., Zakel*, 119 Wn.2d at 571.

[4] Strangely, the majority faults this dissent for discussing the standing issue at all, even though standing was the basis on which the trial judge rejected the suppression argument. *See Williams*, 142 Wn.2d at 23 ("Additionally, the defendant's challenge to this police search would fail, even if we found that Williams had a sufficient expectation of privacy in Jelinek's apartment to confer standing.") Without a reasonable expectation of privacy, Mr. Wisdom had no basis for challenging the inventory. *Id.* The majority's error probably occurred because appellant mistakenly argued standing as a subset of his consent argument and the prosecutor, who was not relying on consent, understandably did not address the consent argument. But, even if standing had not been decided by the trial court, it is still a topic this court must entertain on appeal. RAP 2.5(a). *See Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports*, 146 Wn.2d 207, 212 n.3, 45 P.3d 186 (2002).

The same result should follow even under the automatic standing doctrine since it does not appear that the doctrine "maintains a presence" under these facts. This case does not present the self-incrimination problem to which our automatic standing doctrine applies. *See State v. Jones*, 146 Wn.2d at 334.[5] Mr. Wisdom had already claimed ownership of the drugs prior to the inventory. He would not further incriminate himself by moving to suppress or testifying in support of the motion. Thus, the stated purpose for our automatic standing doctrine would not be advanced here.

For both reasons, Mr. Wisdom lacked standing to contest the scope of the inventory search. On that basis alone, we should affirm.

Nonetheless, assuming Mr. Wisdom had standing, there was nothing wrong with looking inside the unlocked bag full of money—money that could be seen from outside the truck. Inventory searches of stolen vehicles are permitted. *State v. Tyler*, 177 Wn.2d 690, 698, 302 P.3d 165 (2013); *Simpson*, 95 Wn.2d at 189; *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980); RCW 46.55.113(2)(e). The properly conducted inventory search "is made for the justifiable purpose of finding, *listing*, and securing from loss" property. *State v. Montague*, 73 Wn.2d 381, 385, 438 P.2d 571 (1968) (emphasis added); *accord,*

---

[5] While it is somewhat incongruous to use Fifth Amendment standards to adjudge whether standing exists for Fourth Amendment or article I, § 7 challenges, that incongruity exists because of the desire to effectuate the different interests guaranteed by all of those constitutional provisions. Whether there is need to use automatic standing in light of the procedural protections of CrR 3.5 and CrR 3.6 is debatable.

*White*, 135 Wn.2d at 770.[6] The scope of the inventory search includes the glove

compartment and unlocked containers in the vehicle. *White*, 135 Wn.2d at 766-67.[7] The

rule of *Houser* is that *locked* containers cannot be searched.[8] *Tyler*, 177 Wn.2d at 708.

Thus, anything left in a locked trunk is inside a locked container and cannot be disturbed.

*Tyler*, 177 Wn.2d at 708; *White*, 135 Wn.2d at 766-68.

The majority, however, mistakenly equates *closed* containers with *locked* containers.

The mesh bag in question was zippered shut; it was closed, not locked. The cases cited by

the majority do not aid its analysis on this point. In each instance, a closed container *within*

*another container* was not permitted to be searched. In *Houser*, the court stated that the

police could not open and inventory a closed toilet kit found inside a bag inside the locked

trunk. 95 Wn.2d at 147, 156. In *State v. Dugas*, 109 Wn. App. 592, 36 P.3d 577 (2001), the

police were not permitted to check the contents of a closed "key ring pouch" found in the

---

[6] "State law required that [the officer] list the inventory of the vehicle before turning it over to the private towing company." *Tyler*, 177 Wn.2d at 705.

[7] *White* cites the *Houser* court's discussion of *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976), for this proposition. 135 Wn.2d at 766. Given that *Houser* did not involve a search of the glove compartment, this conclusion may be a stretch. If unlocked glove compartments are subject to inventory searches, then that standard is a far better fit for the unlocked bag in this case than the locked trunk situation is.

[8] In the course of its analysis, the *Houser* court relied in part on the decisions in *Arkansas v. Sanders*, 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979) (unlocked luggage) and *United States v. Chadwick*, 433 U.S. 1, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977) (locked footlocker). *See Houser*, 95 Wn.2d at 156-58. Those cases subsequently were overruled in favor of permitting searches of containers found inside vehicles. *California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991). Inexplicably, the majority still relies on *Sanders* despite, and without acknowledging, its demise.

pocket of a coat. In *White*, the court declined to consider the validity of the search of an

unlocked tackle box found in a locked trunk. 135 Wn.2d at 765, 772. In both instances

where it addressed the issue, the court could simply have said that the police lacked

authority to go inside the container in question (a bag in *Houser* and the coat in *Dugas*) if

the rule were as the majority suggests. Neither case did so. Instead, those courts focused on

the lack of need to open a container found within another container.[9] *Houser* and *Dugas* do

not support the argument that the contents of an unlocked bag sitting on the seat of a truck

cannot be inventoried.

But, even if the container rule applies to the mesh bag in this case, an exception

should be made for valuable property that is visible to any viewer of the container. The

need of the police department to secure the victim's property and to protect itself from

claims (by either the victim or the defendant) concerning missing money should take

precedence over any privacy interest that may exist in money openly displayed to the

public.[10] It defeats the very purpose of an inventory search—to list and secure property,

as well as protecting law enforcement from false claims—to make the police ignore a

valuable item in plain sight and act without knowledge of what was in their possession.[11]

---

[9] In the context of inventorying a wallet during jail booking, this court has rejected the container rule. *State v. Garcia*, 35 Wn. App. 174, 665 P.2d 1381 (1983).

[10] For similar reasons, the *Tyler* court rejected an argument that consent should be obtained prior to conducting a vehicle inventory. 177 Wn.2d at 707-11.

[11] As the officer testified here: "any time there is something of high value it's never left in an impounded vehicle. It's placed into property and then claimed by the rightful owner." RP at 9.

6

What is needed to secure $50 might be different than what is needed to secure $50,000. The police need to know what they are guarding and, in cases like this, to whom the property belongs. It simply is not possible to perform these tasks without identifying what has come into their possession.

While the majority suggests that a search warrant should have been sought, that is no answer in the typical case. If Mr. Wisdom had declined to speak, the officer simply would have been facing a bag of money without any reason to believe there might be contraband in the truck. It is not illegal to possess money. How could the officer have obtained a search warrant under those facts?[12] Nor, for that matter, could the officer have relied on Mr. Wisdom's consent to search the truck since he was not lawfully in possession of the vehicle. There simply was no means of performing the officer's duty under the impound laws without inventorying the contents of the bag. For that reason, I also would hold that police have the right during an inventory to check the entire contents of a bag when valuable property is visible.

---

[12] The majority does not attempt to answer this question, presumably because a search warrant cannot issue without probable cause to believe a crime has been committed, nor does it attempt to answer the problem of a thief's ability to contest an inventory in the absence of automatic standing. At its heart, an inventory search is a statutorily and judicially regulated aspect of law enforcement's community caretaking function. As such, judicial regulation should consider all interests—those of the vehicle owner as well as any interest asserted by the thief in possession of the vehicle—when limiting the scope of the inventory search. Since Mr. Wisdom at the time of the inventory disclaimed ownership of anything in the stolen truck except something no one can own, this is not the case to impose new limitations.

7

Thus, I would hold: (1) a defendant's "private affairs" do not include items located in a stolen vehicle, (2) the automatic standing doctrine does not apply here since Mr. Wisdom had already incriminated himself, (3) a proper inventory search extends to the contents of unlocked containers found inside a vehicle (but not in the trunk), and (4) when money or other valuable property is visible in an unlocked container, the police have a right to inventory the contents of the container in order to fulfill their obligations under our impound and inventory laws. I would affirm and, accordingly, therefore dissent from the majority's disposition of this case.

_____
Korsmo, J.