IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34525-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CLARK ALLEN TELLVIK, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Clark Allan Tellvik appeals his convictions for first degree burglary, possession of a stolen vehicle, possession with intent to deliver a controlled substance, making or having burglary tools, possession of a stolen firearm, and second degree unlawful possession of a firearm. We reverse Mr. Tellvik's controlled substance conviction, as the evidence in support of that conviction was obtained during an invalid inventory search. The remainder of Mr. Tellvik's convictions are affirmed.

BACKGROUND

The facts of Mr. Tellvik's case are set forth in our decision in the companion case

of *State v. Peck*, No. 34496-7-III (Wash. Ct. App. May 8, 2018) (unpublished),

https://www.courts.wa.gov/opinions/pdf/344967_unp.pdf.  Those facts need not be

recounted in detail here.  In summary, a property owner in Ellensburg named Laura

Poulter was alerted by video surveillance equipment that a suspicious person was at her

residence.  A call was placed to 911 and Ms. Poulter, who was visiting friends in Cle

Elum, then headed home.

When police arrived at Ms. Poulter's property, they found Mr. Tellvik and Michael

Peck in the driveway.  The two men were attempting to dislodge a truck that had become

stuck in the snow.  Further investigation revealed the truck was stolen.  Mr. Tellvik and

Mr. Peck were arrested and officers performed an inventory search of the truck.  The

search uncovered a black nylon case that looked like it was designed to hold compact

discs (CDs).  Officers opened the case and found packaged methamphetamine, an electric

scale, and a smoking pipe.

During the days following this incident, Ms. Poulter reviewed the surveillance

video of her residence.  She came to believe that she saw one of the two men drop a gun

in the snow.  She believed the gun was still there and called the police to come out and

2

look.  By that time, Ms. Poulter's driveway had been plowed and the area where the truck

had been parked was buried in compact snow.  Officers responded to Ms. Poulter's

residence and looked through the driveway.  Their initial search was unfruitful.  After Ms.

Poulter continued to insist that a gun had been hidden on her property, the police returned

with a metal detector and located a handgun.

Mr. Tellvik was charged with first degree burglary, possession of a stolen vehicle,

possession with the intent to deliver a controlled substance, third degree theft, making or

having burglary tools, possession of a stolen firearm, and second degree unlawful

possession of a firearm.

During pretrial proceedings, Mr. Tellvik joined Mr. Peck's motion to suppress the

fruits of the inventory search.  The trial court denied the motion, but did not enter written

findings of fact and conclusions of law until nearly a year later on March 31, 2017.

Also prior to trial, Mr. Tellvik moved for an order prohibiting the State from

showing the jury a copy of the surveillance video that had been modified to include

captions, noting where the gun was believed to have been dropped.  The trial court

granted this motion.  The court prohibited any "commenting on the evidence."  Report of

Proceedings (RP) (May 10, 2016) at 210.  However, the court specified that witnesses

would be able to "describe what it is they think they're seeing" on the video.  *Id*.  Defense

counsel raised a concern that law enforcement officers, who might be viewed by the jurors as having heightened credibility, should not be able to tell the jurors what is depicted in the video. The court agreed this concern was reasonable. The court ruled that even though witnesses would be allowed to testify as to what they thought they saw in the video, they should not phrase their testimony in terms of what was actually depicted.

At trial, Ms. Poulter was the State's first witness. During questioning about the surveillance video, Ms. Poulter volunteered that what she saw in the video was a gun. She testified, "I saw the gun. . . . [W]ell, I know for sure it was a gun," and "I believe—I know for sure because we still-framed it right on the gun." RP (May 11, 2016) at 330. Ms. Poulter further testified, "it couldn't have been anything but a gun." *Id*. Mr. Tellvik's counsel objected to Ms. Poulter's statements, commenting she "doesn't know for sure what anything was." *Id*. The court overruled the objection. No other witness testified definitively about whether the object in the video was a gun. Mr. Tellvik's attorney did not seek a mistrial.

The jury found Mr. Tellvik guilty of all charges except third degree theft. The court sentenced Mr. Tellvik to 267.5 months' total confinement. Mr. Tellvik appeals.

ANALYSIS

*Motion to suppress evidence—inventory search*

For the same reasons set forth in our decision in *Peck*, we agree with Mr. Tellvik

that the contents of the CD case should have been suppressed as fruits of an illegal

inventory search. *Peck*, No. 34496-7-III, slip op. at 7-9. Because the police officers

lacked either consent or exigent circumstances, the closed CD case should have been

inventoried as a sealed unit. *State v. Wisdom*, 187 Wn. App. 652, 671, 675-76, 349 P.3d

953 (2015); *State v. Houser*, 95 Wn.2d 143, 158, 622 P.2d 1218 (1980). The doctrine of

automatic standing applies in this case and confers on Mr. Tellvik the ability to challenge

the police search. *State v. Evans*, 159 Wn.2d 402, 407, 150 P.3d 105 (2007).

The trial court should have granted the motion to suppress the contents of the

closed CD case. Mr. Tellvik's conviction for possession of a controlled substance must

therefore be reversed. The trial court's failure to enter timely findings of fact and

conclusions of law is moot.

*Ineffective assistance of counsel*

Mr. Tellvik argues his counsel provided ineffective assistance because she failed

to move for a mistrial after Ms. Poulter violated the court's in limine ruling by testifying

that she knew she saw a gun depicted in the surveillance video. Mr. Tellvik also contends

5

that had counsel moved for a mistrial, the trial court would have granted the motion.

Ineffective assistance of counsel is a manifest error affecting a constitutional right that

can be raised for the first time on appeal. RAP 2.5(a)(3); *State v. Brown*, 159 Wn. App.

1, 17, 248 P.3d 518 (2010).

To demonstrate ineffective assistance of counsel, Mr. Tellvik must show both

deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-

35, 899 P.2d 1251 (1995). If a defendant fails to satisfy either prong, this court need not

inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). Deficient

performance occurs when counsel's performance falls below an objective standard of

reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). To show

prejudice, Mr. Tellvik must demonstrate there is a probability that, but for counsel's

deficient performance, "the result of the proceeding would have been different."

*McFarland*, 127 Wn.2d at 335. There is a strong presumption of effective assistance, and

Mr. Tellvik bears the burden of demonstrating the absence of a strategic reason for the

challenged conduct. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002).

Failure to move for a mistrial does not constitute ineffective assistance where it is

clear that counsel's motion would have been denied. "A mistrial should be granted when

the defendant has been so prejudiced that nothing short of a new trial can [e]nsure that the

defendant will be tried fairly." *State v. Gamble*, 168 Wn.2d 161, 177, 225 P.3d 973 (2010). Three factors are necessary to consider when assessing whether an error warrants a new trial: the seriousness of the alleged error, whether erroneously admitted evidence was cumulative, and whether a proper curative instruction was given to the jury. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012).

Here, we find no error that would have warranted a mistrial. Ms. Poulter's testimony that she saw a gun depicted on the surveillance video did not carry any special weight that could have prejudiced the jury. Ms. Poulter was not a law enforcement officer. She did not purport to have any unique ability to decipher the video or perceive firearms. The video was admitted into evidence free from captions and the jurors were afforded the same opportunity to assess its contents as Ms. Poulter. At the same time, Ms. Poulter's insistence that she believed she saw a gun in the video was relevant to explain why the police twice returned to Ms. Poulter's residence after the night of Mr. Tellvik's arrest in order to search the driveway.

Given that Ms. Poulter's testimony helped explain why law enforcement went to unusual lengths to search the driveway and that Ms. Poulter's testimony was not particularly prejudicial, the trial court acted within its discretion to alter its in limine

7

No. 34525-4-III
*State v. Tellvik*

ruling and permit Ms. Poulter's testimony. Mr. Tellvik has not, therefore, shown that counsel was ineffective in failing to request a mistrial.

## CONCLUSION

We reverse Mr. Tellvik's conviction for possession of a controlled substance with intent to deliver and the associated firearm enhancement, affirm his remaining convictions, and remand for resentencing consistent with the terms of this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____        _____
Lawrence-Berrey, C.J.                 Siddoway, J.

8