IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34496-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL NELSON PECK, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Michael Peck appeals his convictions for first degree burglary,

possession of a stolen vehicle, possession of a controlled substance with intent to deliver,

third degree theft, and possession of burglary tools. We agree with his challenge to the

trial court's denial of his motion to suppress evidence of drugs and paraphernalia found in

the warrantless search of a closed container and reverse the controlled substance

conviction that was based on that evidence. We find no other error or abuse of discretion

and affirm his remaining convictions.

FACTS AND PROCEDURAL BACKGROUND

On a Friday night in January 2016, Laura Poulter traveled to Cle Elum to play

cards with friends. At around 1:00 a.m. she was telling her friends about a new security

system on her rural Ellensburg home that she could monitor remotely and pulled out her

cell phone to show them. What they saw was a truck in her driveway and someone who

appeared to be taking items from her home. One of her friends called 911 and described

the events being captured by the surveillance cameras, which soon included the presence

of a second person. Kittitas County sheriff's deputies were dispatched and Ms. Poulter

left to drive home.

When officers arrived at Ms. Poulter's house, Michael Peck and Clark Tellvik

were found standing in deep snow outside a Dodge Dakota truck that was hopelessly

stuck in Ms. Poulter's unplowed driveway. The center glass on the rear window of the

truck had been broken out, its ignition had been punched, and a screwdriver had to be

used to start the vehicle. Officers ran the truck's license plate and confirmed it had been

reported stolen only two days earlier. The truck's owner would later testify that he never

drove the Dakota in snow because it had high performance "racing slicks" rather than

normal tires and couldn't be safely driven in snow or on ice. Report of Proceedings

(RP)[1] at 383.

Mr. Peck, who had been the passenger in the truck, was read his *Miranda*[2] rights

and agreed to talk to a responding officer. He claimed that Mr. Tellvik had picked him

up earlier that evening to go for a drive since neither man was getting along with his

---

[1] All Report of Proceedings citations refer to the report of proceedings that begins with proceedings on April 29, 2016, and includes the trial.

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

respective girlfriend. According to Mr. Peck, they ended up in the vicinity of Ms. Poulter's home and, not knowing how to get back to the highway or freeway, had pulled in to ask for directions. No one answered Mr. Tellvik's knock on the door. Upon trying to leave, they found they were stuck in the snow. They retrieved hay from an open barn, mats from doorways, and eventually a piece of scaffolding to place under the truck's tires in an effort to get out, but to no avail. Mr. Peck denied that either he or Mr. Tellvik had broken into the home or any closed outbuilding.

When the officer asked Mr. Peck if anything in the truck belonged to him, Mr. Peck at first said that nothing was his, but then corrected himself, saying he had a cell phone inside the truck and that a battery and bag of tools in the bed of the truck were his. He explained that on arriving to pick him up, Mr. Tellvik said the truck he was driving was not running very well, so Mr. Peck brought the battery and tools along "just in case." RP at 525.

Upon Ms. Poulter's return to her home, she told officers she believed the battery and bag of tools in the back of the truck were hers and had been taken from her shop, her carport area, or her tool shed. She pointed out that the door to her shop, which she had left locked, was now open. Officers could see signs of forced entry on and below the doorway to the shop and found a crowbar near the truck. Surveillance video would later show Mr. Tellvik using the crowbar to break into the shop.

3

After Mr. Peck and Mr. Tellvik were transported to jail, officers remaining at the scene searched the truck and prepared it for impound. During the search, officers found a black zippered nylon case wedged under the passenger seat that looked like it was designed to hold compact disks (CDs). Officers opened the case and found packaged methamphetamine, an electronic scale, and a smoking pipe.

In the days following the burglary, Ms. Poulter arranged for the person who had installed her surveillance system to help her retrieve video recorded of the men's presence on the property so she could provide it to police. Ms. Poulter reviewed the video herself, and thought she saw one of the men drop a gun onto the ground. She called the police to describe what she saw and told them the gun was probably still buried in snow on her driveway, which was by that time snow packed and recently plowed. Officers were shown the relevant footage by Ms. Poulter, which they agreed appeared to show Mr. Tellvik place something on the ground near the driver's side door of the truck and kick snow over it just as the lights of the patrol cars could be seen approaching. Officers searched the area with a metal detector and located a handgun.

Mr. Peck was charged as a principal or accomplice with first degree burglary, possession of a stolen vehicle, possession with intent to deliver a controlled substance, third degree theft, and making or having burglary tools. The first three counts included charges that Mr. Peck or an accomplice were armed with a firearm.

4

Before trial, Mr. Peck moved the trial court to appoint a forensic media expert to assist with his defense at a projected cost of $7,164. He argued that the videotape from Ms. Poulter's surveillance system had an unexplained seven minute gap and he wanted an expert to examine it for possible alteration or tampering and to enhance images as needed. At argument of the motion, the court questioned the relevance of the gap, asking if something happened during that time period, to which defense counsel responded, "[W]e don't know. There could be." RP at 8. She elaborated:

> [DEFENSE COUNSEL]: . . . [W]hat I need an expert for—is that—the—the gap on this—video purports to show the defendants doing various things, mostly trying to dig their way out of the snow and move their car. But—there are—there are some enhancements that might need to be done. There are some allegations of a gun.

RP at 9. The court confirmed that the prosecutor intended to offer the videotape at trial, but commented that he was being asked to pay a substantial amount for an investigator, "And I don't see why the court should do that right now." RP at 10. It denied the motion.

Also before trial, Mr. Peck moved to suppress evidence obtained during the inventory search of the truck, specifically the drugs and paraphernalia found when officers opened the CD case found under the passenger seat. During argument of the motion, the prosecutor elicited testimony from Corporal Zach Green, who attached importance to the fact that the Dodge Dakota had been determined to be stolen and that

5

when asked whether any property in the truck was his, Mr. Peck claimed to own only a cell phone, a car battery, and a bag of tools. The corporal also testified that the search was being conducted pursuant to department inventory policy.

Deputy Michael McKean also testified at the suppression hearing and explained the reason for the inventory search as being, "We want to make sure there's nothing inside that vehicle that the owner could be held responsible for if it's illegal. We don't want to return any drugs, any weapons, anything with that vehicle that shouldn't be in it." RP at 104. He testified that an inventory search protects the sherriff's office, the registered owner, and the tow company from someone claiming something that was inside the vehicle is now missing.

At the conclusion of argument, the court denied the motion to suppress, finding the search to have been a valid inventory search and therefore an exception to the warrant requirement. The trial court did not enter written findings of fact and conclusions of law until well after trial and the commencement of this appeal.

The jury acquitted Mr. Peck of the count charging him with third degree theft of the battery and tools, but found him guilty of the remaining charges. It found that he or an accomplice had been armed with a firearm in committing the the burglary, possession of a stolen vehicle, and controlled substance crimes. Mr. Peck appeals.

ANALYSIS

Mr. Peck assigns error to the trial court's denial of his motion to suppress, its failure to enter timely findings of fact and conclusions of law on that motion, and its denial of his motion to appoint a forensic media expert.

*Motion to suppress*

Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs . . . without authority of law." "Authority of law" requires a valid warrant unless one of a few jealously guarded exceptions to the warrant requirement applies. *In re Pers. Restraint of Nichols*, 171 Wn.2d 370, 379, 256 P.3d 1131 (2011) (Fairhurst, J., dissenting). One of those jealously guarded exceptions is a valid inventory search by law enforcement incident to impoundment. *State v. Wisdom*, 187 Wn. App. 652, 671, 349 P.3d 953 (2015).

Police may make a limited inventory of the contents of a vehicle lawfully and necessarily taken into custody, not for the purpose of uncovering evidence of a crime, but to protect the vehicle owner's belongings and protect the police from liability against claims of lost or stolen property. *State v. Houser*, 95 Wn.2d 143, 147-48, 622 P.2d 1218 (1980). In order to justify a warrantless search on grounds of inventory incident to a lawful impoundment, the State must demonstrate that the impoundment was lawful and that the inventory search was proper and not a pretext for an investigative search. *State v.*

*Simpson*, 95 Wn.2d 170, 188-89, 622 P.2d 1199 (1980) (plurality opinion). A motor

vehicle may be impounded and an inventory search conducted when, as here, an officer

has probable cause to believe the vehicle was stolen. *State v. Barajas*, 57 Wn. App. 556,

560-61, 789 P.2d 321 (1990).

An inventory search must be restricted to the areas required to fulfill the purpose

of the search. *State v. Tyler*, 177 Wn.2d 690, 701, 302 P.3d 165 (2013); *Houser*, 95

Wn.2d at 154. If officers conducting an inventory search encounter a locked

compartment or closed container, it cannot be opened absent exigent circumstances or the

consent of the owner. *Wisdom*, 187 Wn. App. at 675-76; *Houser*, 95 Wn.2d at 158; *State*

*v. White*, 135 Wn.2d 761, 771-72, 958 P.2d 982 (1998). If a locked or closed container is

encountered, absent exigency or consent, the officers must inventory the container as a

sealed unit. *See Houser*, 95 Wn.2d at 158-59. Here, the officers opened a closed

container in the absence of any exigency and without consent. Before opening it, they

needed a warrant.

The State attempts to distinguish *Wisdom* by pointing out that in *Wisdom* the

defendant had acknowledged owning the container in which drugs were found whereas

here Mr. Peck, by claiming to own only a cell phone, battery, and bag of tools, implicitly

denied owning the CD case. In the suppression hearing below, Corporal Green and the

trial court also attached importance to Mr. Peck's implicit disclaimer of ownership. But

8

where a crime charged is a possessory crime such as the controlled substance crime here, the law recognizes a forced incrimination dilemma presented to a defendant and affords the defendant automatic standing to contest a search. A defendant has automatic standing to challenge a search if two elements are present: (1) possession is an essential element of the offense with which the defendant is charged and (2) he or she was in possession of the contraband at the time of the contested search or seizure. *State v. Evans*, 159 Wn.2d 402, 407, 150 P.3d 105 (2007). Both elements are present here.[3]

The court erred in denying the motion to suppress. Reversal of the conviction for possession of a controlled substance renders moot Mr. Peck's assignment of error to the trial court's failure to timely enter findings of fact and conclusions of law following the suppression hearing.

*Denial of motion to appoint defense expert*

CrR 3.1(f)(1) provides that "[a] lawyer for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in the case may request them by a motion to the court." A trial court shall authorize the services "[u]pon finding the services are necessary and that the defendant is financially unable to obtain them." CrR 3.1(f)(2).

---

[3] We do not examine the issue of abandonment. It was not a basis for the State's justification of the search in the suppression hearing and the State does not attempt to raise it for the first time on appeal.

The right to effective assistance of counsel requires that the State pay for experts for an indigent defendant when those experts are necessary. *State v. Dickamore*, 22 Wn. App. 851, 854, 592 P.2d 681 (1979). This court has held that "a defendant's constitutional right to the assistance of an expert witness 'is no broader than his right to petition for state paid services under CrR 3.1(f).'" *State v. Mines*, 35 Wn. App. 932, 935, 671 P.2d 273 (1983) (quoting *Dickamore*, 22 Wn. App. at 854). The Washington Supreme Court has held that CrR 3.1(f) mandates the appointment of an expert at public expense only when "necessary to an adequate defense." *State v. Young*, 125 Wn.2d 688, 692, 888 P.2d 142 (1995).

A trial court's determination of whether expert services are necessary for an indigent defendant's adequate defense is reviewed for abuse of discretion. *State v. Kelly*, 102 Wn.2d 188, 201, 685 P.2d 564 (1984). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The trial court denied Mr. Peck's motion for a forensic media expert because he failed to demonstrate that the testimony of such an expert was necessary to an adequate defense. What Ms. Poulter knew about the condition of her property upon departing and what she and responding officers found upon arriving and encountering Mr. Peck and Mr. Tellvik was strongly corroborative of what was seen on the surveillance videotape.

10

Defense counsel could not point to any reason to question what the videotape showed. When the trial court pressed defense counsel on the relevance of the reported gap in the tape and what she hoped to learn or prove with the expert's help, she admitted she didn't know. In essence, the defense hoped that something as yet unknown and unimagined might prove exculpatory.

By stating it could not see a reason to approve engagement of the expert "right now," the trial court's decision allowed Mr. Peck to renew his request if he could later show that an expert's services were needed for an adequate defense. The request was never renewed. The trial court did not abuse its discretion.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds, Mr. Peck raises one. He argues that the State presented insufficient evidence that he was an accomplice to Mr. Tellvik's possession of a stolen vehicle and the corresponding firearm enhancement.

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.*

11

A person is guilty of possession of a stolen motor vehicle if he possesses a stolen motor vehicle. RCW 9A.56.068. The State must prove that the defendant acted with knowledge that the motor vehicle had been stolen. *State v. Porter*, 186 Wn.2d 85, 90, 375 P.3d 664 (2016). A person knows of a fact by being aware of it or having information that would lead a reasonable person to conclude the fact exists. RCW 9A.08.010(1)(b). Both circumstantial evidence and direct evidence are equally reliable to establish knowledge. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "When a person is found in possession of recently stolen property, slight corroborative evidence of other inculpatory circumstances tending to show his guilt will support a conviction." *State v. Portee*, 25 Wn.2d 246, 253-54, 170 P.2d 326 (1946).

Jurors were instructed that a person is an accomplice if, with knowledge that it will promote or facilitate the commission of a crime, he does any number of things, one being to aid the person in commission of the crime. They were told that "aid" means all assistance, however given, although it must consist of more than mere presence and knowledge of the other person's criminal activity. Clerk's Papers at 152.

Mr. Peck admitted to officers that when picked up in the Dodge Dakota, he knew it was not the vehicle Mr. Tellvik usually drove. It was apparent that the truck's center back window had been broken out, its stereo had been removed, and its ignition had been punched. Asked by an officer if he didn't think it odd that Mr. Tellvik started the truck

12

with a screwdriver, Mr. Peck answered no, and that he'd "had vehicles like that." RP at 520. Jurors could reasonably view that as not credible, and as betraying consciousness of guilt on Mr. Peck's part. Viewed in the light most favorable to the State, the visible hallmarks of a stolen vehicle provided enough information to lead Mr. Peck to conclude that the truck was stolen.

In closing argument, the prosecutor identified two types of assistance from Mr. Peck that jurors could consider. First was his testimony that he had provided a car battery and tools "just in case" he and Mr. Tellvik had trouble with the truck. Since jurors acquitted Mr. Peck of theft of the battery and tools, they appear to have believed that they were his. Second, the prosecutor reminded jurors of the video, and that when stuck in the snow, it was Mr. Peck who was seen outside the truck pushing and taking other steps to try to help Mr. Tellvik get the truck out.

As an accomplice to Mr. Tellvik's possession of a stolen vehicle, Mr. Peck was liable for the firearm enhancement if the State proved that Mr. Tellvik possessed a firearm in committing the crime. *See* RCW 9.94A.825. The videotape and the eventual location of a firearm at the location where the truck became stuck in the snow provided sufficient evidence that Mr. Tellvik possessed a firearm in committing possession of the stolen vehicle.

No. 34496-7-III
*State v. Peck*

We reverse Mr. Peck's conviction for possession with intent to deliver a controlled substance and the associated firearm enhancement, affirm his remaining convictions, and remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

I CONCUR:

_____
Pennell, A.C.J.

14

No. 34496-7-III

KORSMO, J. (dissenting) — An asserted right of privacy under art. I, § 7 of our state constitution still "must be reasonable to warrant protection." *State v. Goucher*, 124 Wn.2d 778, 784, 881 P.2d 210 (1994). There is nothing reasonable in allowing a passenger in a stolen vehicle to challenge the scope of an inventory search conducted by police with the intent to ascertain what property they have just taken into their possession and to whom it might be returned. That is particularly the case where, as here, the person asserting the privacy right expressly disclaimed ownership of the item searched. One cannot both assert that an item is not his and still claim that the item is his "private affair."

Given that I have previously expounded on the problems created by this court's expanded restrictions on inventory searches in my dissent in *State v. Wisdom*, 187 Wn. App. 652, 679-684, 349 P.3d 953 (2015) (Korsmo, J., dissenting), there is little more to say here. The facts of this case do illustrate the problem, however. *Wisdom* extended the requirement that locked items be inventoried as a unit to closed or zippered items, even though unlocked. Here, what officers believed was a CD (compact disk) case turned out to be a container of controlled substances. It just as likely could have contained an explosive or the Hope Diamond. Police cannot reasonably protect themselves from

No. 34496-7-III
*State v. Peck—Dissent*

claims or return property to its rightful owner if they are unable to look in unsecured containers.

Mr. Peck's assertion of a privacy interest is not one that is reasonable under either the state or federal constitution. Therefore, I respectfully dissent.

_____
Korsmo, J.

2